F. H. EVANS *et al., as Partners, etc., Appellees,* V. R. S.
MOSELEY *et al., Appellants.*

No. 16,911.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Sale—Penalty or Liquidated Damages.* A con-
tract for the purchase of about 1000 head of stock cattle for
about $40,000, after providing for receiving the cattle on the
terms and conditions therein set forth, contained the follow-
ing: "And failure on the part of the party of the second
part shall cause the forfeiture of the advance payment of
$3000 this day made. The party of the first part hereby
acknowledges receipt from the party of the second part of
$3000, as partial or advance payment on said cattle, which
sum shall be returned to said party of the second part in the
event of the party of the first part failing to comply with the
terms and conditions of this contract, and same shall be paid
by said first party in addition to any and all sums which
shall become payable to said party of the second part by
reason of any shortage in numbers of head of cattle as here-
inafter provided." *Held,* to be a stipulation for a penalty and
not for liquidated damages.

2. —— *Presumption that Penalty was Intended.* While, or-
dinarily, parties are bound by the terms of their contracts,
unless it appears that they *bona fide* and actually intended to
stipulate for liquidated damages they will be presumed to
have intended a penalty only, especially where the language
used is susceptible of either construction, or where actual
damages might, without serious difficulty, have been estimated
in advance, or where the sum named would be recoverable
alike for a partial or for a total breach.

3. —— *Measure of Damages—Market Price at Shipping Cen-
ter.* The market price of stock cattle at Garden City is
largely governed by the price at Kansas City, less the freight,
and in an action to recover damages for failure to purchase
and receive such cattle at Garden City it is competent to show
their market price at Kansas City at such time, the rule be-
ing that the best evidence of which a case is susceptible should
be produced.

4. PRACTICE, DISTRICT COURT — *Special Questions.* The trial
court is not an automaton or mere umpire, and should exer-
cise a sound discretion with reference to the number and form
of special questions which the parties request the court to sub-

mit, provided proper, direct and material questions, not repetitions, be submitted.

5. INTEREST—*Unliquidated Damages.* Interest can not be allowed on an award of unliquidated damages, before judgment.

Appeal from Finney district court. Opinion filed March 11, 1911. Reversed.

*O. H. Foster, T. F. Garver,* and *R. D. Garver,* for the appellants.

*William Easton Hutchison,* and *C. E. Vance,* for the appellees.

The opinion of the court was delivered by

WEST, J.: The appellants contracted with the appellees to purchase about 1000 head of steers located in Finney county, Kansas. A cash payment of $3000 was made, and the contract contained the following:

"Party of the second part [the appellants] hereby agrees and binds itself to receive said cattle at the time, place and on the terms and conditions herein set forth, and herewith agrees to make final and balance of payment on said cattle to said second party at time of delivery of said cattle, and failure on the part of the party of the second part shall cause the forfeiture of the advance payment of $3000 this day made. The party of the first part hereby acknowledges receipt from the party of the second part of $3000, as partial or advance payment on said cattle, which sum shall be returned to said party of the second part in the event of the party of the first part failing to comply with the terms and conditions of this contract, and same shall be paid by said first party in addition to any and all sums which shall become payable to said party of the second part by reason of any shortage in numbers of head of cattle as hereinafter provided."

The appellants were sued for damages for refusal to accept the cattle, and the jury awarded $7000, less the $3000, and $248.66 interest, making $4248.66, and found that the appellants notified the appellees that

they would not carry out the contract, but that the appellees offered to deliver the cattle, and that there was a market at Garden City for such cattle. The appellants urge error as to the tender of the cattle, the amount of damages, the market, the refusal of certain special questions, and the allowance of interest.

The finding of the jury as to the tender of the cattle was supported by portions of conflicting evidence, and is therefore controlling.

It is insisted that the contract itself fixed the measure of damages at $3000, and that this sum could not be exceeded in the award to the appellees. There is no branch of the law on which a unanimity of decision is more difficult to find or on which more illogical and inconsistent holdings may be found. One theory is that the law abhors a forfeiture, as nature abhors a vacuum, and that the courts ought to frown with equal displeasure on anything which may be considered a forfeiture. Another theory is that close heed should be paid to the language used, distinguishing carefully between penalty and liquidated damages, with constant partiality toward a construction which favors the former; a third, that parties competent to contract and dealing at arm's length should be held to the plain meaning of their contracts into which they have deliberately entered. It is exceedingly difficult to deduce from the decisions a rule which affords sure guidance to the contracting parties or to the courts, but a workable approximation to such a rule may possibly be reached. In *Van Buren v. Digges,* 11 How. (52 U. S.) 461, the court said:

"The term 'forfeiture' imports a penalty; it has no necessary or natural connection with the measure or degree of injury which may result from a breach of contract, or from an imperfect performance. It implies an absolute infliction, regardless of the nature and extent of the causes by which it is superinduced. Unless, therefore, it shall have been expressly adopted

and declared by the parties to be a measure of injury or compensation, it is never taken as such by courts of justice, who leave it to be enforced where this can be done in its real character, viz., that of a penalty." (p. 477.)

In *Chicago House-Wrecking Co. v. United States,* 106 Fed. 385, the court of appeals of the seventh circuit held a provision in a contract to be one for a penalty and not for liquidated damages, by which the parties bound themselves in the sum of $20,000, "computed and agreed upon by and between the United States of America and ourselves as liquidated damages, and not as a penalty, to be immediately due to the United States of America on the first day of April, 1897" (syl.), although this ruling was based in part on a statute directing the national courts in such cases to "render judgment for the plaintiff to recover so much as is due according to equity." (Syl.) This would seem to be one instance where the parties made their meaning plain beyond all cavil, but the court, by an elaborate review of authorities, reached the conclusion that these parties could not have really meant what they said, and that, even if they did, such a liquidated sum would be unjust and inequitable. In *Sun Printing & Publishing Assn. v. Moore,* 183 U. S. 642, the court, speaking through Mr. Justice White, held that the naming of a stipulated sum is conclusive upon the parties in the absence of fraud or mutual mistake, and that they may stipulate for such sum where the damages are of an uncertain nature. The *Sun* company chartered a yacht to be used in gathering news during the late war with Spain. The yacht was wrecked and lost, and the owner sued for the stipulated damages of $75,000, the language of the charter party being, "for the purpose of this charter the value of the yacht shall be considered and taken at the sum of $75,000. And the said hirer shall procure security or guarantee to and for the owner," in the sum stated, "to secure any and all loss and damage

which may occur to said boat or its belongings, which may be sustained by the owner by reason of such loss or damage and by reason of the breach of any of the terms or conditions of this contract." (p. 656.) The court said that it was pressed with much earnestness and sought to be supported by copious reference to authority "that the intent of the contracting parties should not be given effect to, because it is our duty to disregard the contract and substitute our will or our conception of what the parties should have done for that which they did plainly do." (p. 659.) Then, after a most exhaustive review of the decisions, the learned justice reached this conclusion:

"It may, we think, fairly be stated that when a claimed disproportion has been asserted in actions at law, it has usually been an excessive disproportion between the stipulated sum and the possible damages resulting from a trivial breach *apparent on the face of the contract,* and the question of disproportion has been simply an element entering into the consideration of the question of what was the intent of the parties, whether *bona fide* to fix the damages or to stipulate the payment of an arbitrary sum as a penalty, by way of security. . . . The law does not limit an owner of property, in his dealings with private individuals respecting such property, from affixing his own estimate of its value upon a sale thereof, or on being solicited to place the property at hazard by delivering it into the custody of another for employment in a perilous adventure. If the would-be buyer or lessee is of the opinion that the value affixed to the property is exorbitant, he is at liberty to refuse to enter into a contract for its acquisition. But if he does contract, and has induced the owner to part with his property on the face of stipulations as to value, the purchaser or hirer, in the absence of fraud, should not have the aid of a court of equity or of law to reduce the agreed value to a sum which others may deem is the actual value." (pp. 672, 673.)

Turning now to our own decisions, it may be observed that in *Heatwole v. Gorrell,* 35 Kan. 692, one who had

sold his business and good will, and bound himself in the sum of $500 not to engage in such business at the same place for five years, was held liable for actual damages only, the obligation being construed as one for a penalty and not for liquidated damages. It was held that whenever one binds himself in a fixed sum for the performance or nonperformance of something, "without stating whether such fixed sum is intended as a penalty or as liquidated damages, and without regard to the magnitude or the number of any breaches that may occur, or the amount of the damages that may ensue, and the contract is such that it may be partially performed and partially violated, such fixed sum must be considered as a penalty, and not as liquidated damages." (Syl. ¶ 2.)

In *Condon v. Kemper*, 47 Kan. 126, the agreement was to build a wall or remove a certain house three feet and put it in as good condition as before, and the contract stipulated that a failure to perform these obligations by Condon should entitle Kemper to recover from him "the sum of five hundred dollars as liquidated and ascertained damages for the breach of this contract." (p. 135.) It was held that this was a penalty, and not liquidated damages; that as the cost of making the breach good was shown by the evidence to be only $100, the parties "could not have had in contemplation actual compensatory damages." (Syl.) In the opinion Mr. Justice Valentine said:

"Of course, the words of the parties with respect to damages, losses, penalties, forfeitures, or any sum of money to be paid, received or recovered, must be given due consideration; and, in the absence of anything to the contrary, must be held to have controlling force; but when it may be seen from the entire contract, and the circumstances under which the contract was made, that the parties did not have in contemplation actual damages or actual compensation, and did not attempt to stipulate with reference to the payment or recovery of actual damages or actual compensation, then the

amount stipulated to be paid on the one side, or to be received or recovered on the other side, can not be considered as liquidated damages, but must be considered in the nature of a penalty, and this even if the parties should name such amount 'liquidated damages.' " (p. 130.)

He then closed a most thorough and illuminating quotation of authorities (p. 135) with the following from *Myer v. Hart,* 40 Mich. 517:

"Just compensation for the injury sustained is the principle at which the law aims, and the parties will not be permitted, by express stipulation, to set this principle aside." (p. 523.)

He closed the opinion itself, however, after referring to the smallness of the actual damages, with this sentence:

"All this shows that the parties did not have in contemplation the matter of actual compensatory damages when they stipulated that Kemper might recover five hundred dollars from Condon as liquidated and ascertained damages in case of a breach of the contract, but shows that in fact, though not in words, they fixed the sum of five hundred dollars as a penalty to cover all or any damages which might result from a breach of the contract." (47 Kan. 135.)

(To the same effect is *Davidson v. Hughes,* 76 Kan. 247.)

In *Railroad Co. v. Gaba,* 78 Kan. 432, it was held:

"The extent of a possible future loss to be paid in the event of a breach of contract may be agreed upon in advance, where there is difficulty in determining the extent of the loss and the resulting damages are uncertain. In such a case the amount so fixed, if reasonable, will be allowed when the default occurs." (Syl. ¶ 2.)

It was further held that the use of the words "forfeiture," "penalty," and "liquidated damages," is not controlling, "although due weight should be given to such expressions, in connection with other parts of the

agreement, the subject matter, and other facts and circumstances." (Syl. ¶ 4.)

In *Bank v. Burlington,* 79 Kan. 797, it was held:

"Where damages provided for in a contract are uncertain in their nature and can not well be ascertained by any pecuniary standard, and where the parties themselves, understanding the peculiar circumstances surrounding the transaction, are better able to estimate the loss that may be sustained by delay or failure of performance, they are permitted to fix the amount of damages to be recovered." (Syl. ¶ 4.)

There the matter contracted about involved the loss to the city arising from failure to supply water, and of necessity such loss would be exceedingly difficult to estimate, and the parties to the contract were supposed to compute and consider the amount carefully in advance.

We think it may fairly be said that while ordinarily parties are bound by the terms of their contracts, still the courts have an idea that they are constituted to do justice, and unless it appears that the parties *bona fide* and actually intended to stipulate for liquidated damages—which damages would often be grossly inequitable and unjust—they will be presumed by the courts to have intended that which is just and equitable, a mere penalty, and especially so where the language used is susceptible of either construction or where it is plain that actual damages might, without serious difficulty, have been estimated in advance, or where the sum agreed upon would be recoverable alike for a partial or for a total breach. Here about a thousand head of cattle were to be delivered in a certain condition, at a certain time and place, for about $40,000. The parties, without serious difficulty, could have estimated in advance the loss which might arise from a total or partial failure to deliver. Notwithstanding the language used in the contract, it is difficult if not impossible to believe that the parties really intended that

$3000 should be forfeited or recovered alike for a total failure or for a failure to deliver twenty or forty head of the cattle. Indeed, if men dealing in cattle to the extent indicated by this contract actually intended to foreclose all question as to the damages to be recovered for a partial or total breach, they could have used language far more perspicuous and free from ambiguity. As it is practically impossible to discover from the wording employed by them that they intended a payment of $3000 for a partial breach, so it is equally difficult to find therefrom that they intended that sum to cover the loss arising from a total breach. We hold, therefore, that the trial court correctly construed the stipulation as one for a penalty only.

There was testimony to the effect, and the jury found, that there was a market at Garden City for cattle such as those contracted for. The court excluded evidence of prices at Kansas City, and this is complained of as material error. While the general rule in cases of this kind confines the evidence of the value to the contemplated place of delivery, still the testimony shows that the Garden City market for stock cattle is largely governed by the Kansas City market, and we know what everybody else knows—that the price of such cattle at Garden City is practically fixed by the Kansas City market price, less the freight from the one place to the other. The appellants offered to show the Kansas City price, which differed materially from the Garden City price testified to by witnesses for the appellee, and we think the trial court should have permitted the introduction of this evidence. As was said in *McCarty, Adm'r, v. Quimby,* 12 Kan. 494, 498, it is a fundamental rule of evidence that the best evidence of which the case is susceptible must be produced. (See, also, *Hanson v. Lawson,* 19 Kan. 201.) In section 1290 of volume 2 of Wharton's Law of Evidence it is said:

"Distant markets can not be consulted in proof of

value; though it is otherwise if the markets be in any way interdependent, or sympathetic."

In *Sisson v. Cleveland and Toledo Railroad Co.,* 14 Mich. 489, in holding that newspaper market reports were a proper source of knowledge, Mr. Justice Cooley said:

"As a matter of fact, such reports, which are based upon a general survey of the whole market, and are constantly received and acted upon by dealers, are far more satisfactory and reliable than individual entries, or individual sales or inquiries; and courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon, and demand evidence of a less certain and satisfactory character." (p. 497.)

In *Siegbert and others v. Stiles,* 39 Wis. 533, it was held that the market price of hogs at Prairie du Chien could be shown by evidence of the market price at McGregor. Although these two towns are separated only by the Mississippi river, the court in the opinion said:

"As a matter of course, the market price of any staple in the interior towns, where such staple is gathered directly from the producers and shipped to some great market, is governed by the prices therefor which prevail at such market." (p. 537.)

(See, also, *Jones v. Railway,* 53 Ark. 27.)

The jury answered nine special questions, but the appellants complain that the trial court refused to submit six others. One related to an offer to deliver the cattle and a tender of an inspection certificate. As the jury found that the appellants had notified the appellees that they would not take the cattle, and that the appellees had offered to deliver them with a certificate of inspection, this question, and two others with reference to inspection, were immaterial and largely repetitions of other questions answered by the jury. Another was with reference to the Garden City market, and was a duplicate of one submitted to and answered by the jury.

The two remaining questions concerned the Kansas City market, and in view of what we have said they should have been submitted. It is suggested by the appellants that the trial court assumes the right in all cases to refuse or modify special questions prepared by counsel and to substitute its own. The testimony does not so show, but the exercise of a sound discretion in this respect would meet and merit our approval. The use of special questions has often been permitted to an extent uncalled for and unjustifiable. The trial court is not an automaton nor a mere umpire. Its duty and dignity require it to restrict the statutory right to the use of special questions to what in each case is a sane and fair administration of justice, and not to cumber the record and waste the time of the court in "vain repetitions" or irrelevant or trap questions. Mr. Justice Brewer, in *City of Wyandotte v. Gibson, Adm'x*, 25 Kan. 236, in speaking of counsel's right to submit instructions and special questions, said:

"He may present any number of questions for submission, as any number of instructions, but it is the duty of the court to determine what in the one case shall be submitted, as in the other what shall be given. (p. 243.)

And in *Mo. Pac. Rly. Co. v. Holley*, 30 Kan. 465, he said:

The court is not a mere mouthpiece through which the party interrogates the jury. The jury is not, as it were, placed on the witness stand to be cross-examined by counsel. It is the duty of the court to supervise the questions presented—to select the most important, and arrange them in a clear and natural manner. (p. 473.)

(See, also, *Elliott v. Reynolds*, 38 Kan. 274; *Waggoner v. Oursler*, 54 Kan. 141; *Railway Co. v. Lycan*, 57 Kan. 635, 646.)

The jury were erroneously permitted to include interest in their award of damages, the rule in this state

being that interest is not recoverable on awards for unliquidated damages, before judgment.. (*Milling Co. v. Buoy,* 71 Kan. 293, and cases cited; *Latham v. Harrod,* 83 Kan. 323.)

The judgment is reversed, and the cause remanded for a new trial as to the amount of damages only.