Metz v. Clay.

No. 20,691.

J. W. METZ, *Appellant*, v. J. H. CLAY, CHESTER CLAY, and S. E. CLAY, *Appellees*.

SYLLABUS BY THE COURT.

1. TRIAL—*Evidence—Case for Jury*. The evidence examined, and held sufficient to take case to the jury.

2. SALE—*Lumber Business—Agreement Not to Engage in Lumber Business for Five Years—Consideration*. The bond executed by the defendant to stay out of the lumber business for a fixed time within certain territory held to have been a part of the transaction covering the sale of his lumber yard to the plaintiff and to have rested on the same consideration.

3. SAME—*Bond One for Penalty—Former Cases Considered*. Following *Evans v. Moseley*, 84 Kan. 322, 114 Pac. 374, and *Kuter v. Bank*, 96 Kan. 485, 152 Pac. 662, the bond sued on herein is construed and held to be one for penalty and not for liquidated damages.

4. SAME—*Plaintiff's Right to Maintain Action*. Although the plaintiff transferred the lumber yard in question to a corporation (in which he was largely interested officially and as a stockholder), he is not shown to have assigned the bond or to have disposed of another yard affected by the terms thereof. *Held*, that under the pleadings and evidence the claim that he is without right to maintain the action can not be sustained.

Appeal from Clark district court; LITTLETON M. DAY, judge. Opinion filed June 9, 1917. Reversed.

*A. L. Noble*, of Winfield, *J. N. Tincher*, of Medicine Lodge, and *Robert C. Mayse*, of Ashland, for the appellant.

*W. W. Harvey*, of Ashland, for the appellees.

The opinion of the court was delivered by

WEST, J.: This action was brought to recover liquidated damages for a breach of contract. A demurrer to the plaintiff's evidence was sustained and he appeals.

In the spring of 1910, John H. Clay owned a lumber yard at Ashland; and with a minor boy was conducting it in the name of J. H. Clay & Son. J. W. Metz was a Wichita lumberman. After some talk in March, the parties, on April 2, 1910, entered into a contract, set out in the answer, to sell the yard

and buildings for $4000, $500 being paid in cash, "for the six lots, together with all appurtenances, office fixtures, my good will, influence and business, which I have established at Ashland, Kan., and to sign a contract not to engage in the lumber business within a radius of fifty miles of Ashland, Kan., for five years from date of the completion of the inventory of the stock." The lumber and other merchandise to be figured at the prices shown by the latest inventories, certain freight added. The writing was signed by John Clay, and contained, among other things, the following:

"I hereby agree to commence invoicing the stock May 2d, 1910, and continue the same until the stock is completely listed and figured, and before the inventory is commenced I am to sign an agreement as set forth in the above for my good will and business that I have established, and influence for a period of five years within a radius of fifty miles. This contract is to be left in the hands of Judge Price until all settlements are ready to be made, and the delivery of this contract to J. W. Metz upon payment as set forth above."

The plaintiff alleged a purchase of the property in question from J. H. Clay & Son, and their business good will, and as part of the consideration an agreement by J. H. Clay & Son not to engage in the lumber business in the city of Ashland or the trade territory adjacent thereto for a period of five years, either directly or indirectly, and not to lend their services to any one engaged in this line of business within that territory. That as a part of the consideration for the purchase they executed their contract of May 2, which is set out as an exhibit. It was alleged that J. H. Clay violated the contract by engaging in the lumber business in Ashland in the name of Clay and another of his sons, and continuing in such business, furnishing the means therefor and lending his services to the son in such business in violation of the agreement. This agreement purported to bind the defendants in the penal sum of $4000 to J. W. Metz, his heirs, assigns or personal representatives on the following condition:

"WHEREAS, J. H. Clay and Chester Clay, his son, partners under the style and firm name of J. H. Clay & Son, have been engaged in the lumber business at Ashland, Kan., and desiring to sell the said business, have agreed with J. W. Metz, the purchaser, as a part of the consideration of the sale of said business, not to engage in the same line of business at Ashland, Kan., or within a radius of fifty miles therefrom, nor

to engage or lend their services to any one in said business within said radius or territory for said period of time, and not to lend their name nor permit it to be used by any one in said line of business, and that if either of said principals should, either directly or indirectly, engage in the said lumber business, or engage or lend their services to any one in said line of business, or permit their name to be used in said line of business at Ashland, Kan., or within a radius of fifty miles therefrom,, he or. they should forfeit to the said J. W. Metz, purchaser as aforesaid, or to his heirs, assigns, or personal representatives, the sum of Four Thousand Dollars as liquidated damages for such breach of contract and agreement.

"Now, Therefore, if the said J. H. Clay and Chester Clay shall well and truly keep their agreement and promise not to directly or indirectly engage in the lumber business at Ashland, Kan., or within a radius of fifty miles therefrom, nor engage their services to any one in said line of business, nor permit their names to be used by any one in said line of business, for a period of five years, this bond and obligation to be void; otherwise, in full force and effect."

The answer denied any agreement to give the bond sued on and alleged that it was without consideration, and denied going into the lumber business since the sale of the yard in question, and further pleaded the two years' statute of limitation. The wife adopted the answer of her husband. The minor son, by guardian *ad litem,* filed a general denial.

The purchase price was $13,722. H. L. Coat testified that he managed the yard until October, 1915, that it occupied the site purchased until the spring of that year when it was moved to another location in Ashland; that after the sale of the yard to Metz, and in the spring of 1911, the witness saw J. H. Clay selling posts and loading out posts and cement in front of his residence. These posts were shipped from Belle Plaine and hauled to Clay's house; the witness saw J. H. Clay showing men the posts, and saw Chester Clay loading them out to the parties who had been looking at them in the morning. That in March, 1911, and in the fall of 1912, J. H. Clay was selling lumber in the yard of a new location, and told the witness he was going to start the boys up in business, and he wanted to get them on their feet and was going to put up that building for them. Witness had seen J. H. Clay showing men lumber there. This occurred in 1911 and every year since. J. H. Clay seemed to go regularly to work. In the spring of 1912 the witness had written to J. W. Metz about Clay selling lumber,

and one day J. H. Clay came to witness with a letter from Metz in his hand and directed the witness to tell Metz "that I am in the lumber business and I am going to sell stuff and if he wants to sue me on that contract I am ready for him."

Porter Seacat testified that in 1914 he bought lumber for a granary at the Clay yard, made the contract with J. H. Clay who filled the bill and made the price, but who gave the witness to understand that it was his son's business and told him to settle with his son, but directed that if the son Lloyd did not settle according to agreement to come back to him; that one overcharge by the son was refunded by J. H. Clay; that J. H. Clay told witness he was backing his son Lloyd in the business. Frank Anderson testified that he bought a few boards of J. H. Clay at the Clay lumber yard sometime in 1911 or 1912, but settled the bill with the son. Sometime in 1912 witness had a load of lumber on his wagon which he had purchased elsewhere, when he was accosted by J. H. Clay. The witness testified:

"He said if you bought it of me I would sell it so much cheaper. I don't remember how much cheaper it was, but he told me I could get the lumber cheaper there."

A number of other witnesses testified to acts and conversations on the part of J. H. Clay indicating a more or less active interest in the business, and a persistent disposition to solicit patronage for the yard which he claimed was conducted by the son.

This showing, contrasted with the conditions of the bond, was such that the plaintiff had a right to go to the jury on the question of damages.

It is argued that the bond was void and without consideration. But the testimony shows without dispute that it was the understanding that J. H. Clay was to give security for the performance of his contract, that no objection was made to signing the one in question, and it was really a part of the entire transaction covering the purchase and sale of the property and supported by the same consideration.

The oft traversed ground of penalty or liquidated damages has been thoroughly gone over by counsel, each side claiming full support for its contention. The plaintiff testified to the effect that he thought if the defendant should set up business

Metz v. Clay.

in opposition it might work a damage of $1000.00 each year for five years. But it would be unreasonable to hold that opposition for one year should work the same recovery as opposition for five years. The question of penalty or liquidated damages was considered in *Evans v. Moseley,* 84 Kan. 322, 114 Pac. 374, and under that decision and *Kuter v. Bank,* 96 Kan. 485, 152 Pac. 662, and others cited in the two cases, the bond must be treated as one for penalty and not for liquidated damages.

In the answer it was alleged—

"That the plaintiff, at the time he purchased said stock from defendant, and for several years prior thereto and continuously since, was and still is the owner of a number of lumber stocks situated at various points in Kansas and Oklahoma, one of said stocks being at Sitka, Kansas, six miles east of Ashland."

The plaintiff testified that at the time he did not know just how he would run the business but "he turned over the yard to the Metz Lumber Company, a Kansas corporation, which has operated it ever since"; that he was still president and director and owner of 1598 of the 200 shares of stock, and at the time of the purchase was personally interested in a lumber yard at Sitka; that the stock was delivered by Clay and son to the Metz Lumber Company, and from it they got their pay; that that company had conducted the business since, and that he had personal supervision over it as president, but had conducted no lumber business personally in Ashland. The bond ran "to J. W. Metz, his heirs, assigns, or personal representatives." There is no evidence or claim that he assigned it to the company. The defendant contends that the plaintiff can not maintain this action as all the interest he has in it arises from his ownership of stock in the corporation. But as he apparently owns the bond and was for some time, and according to the answer continued to be, the owner of another lumber yard near Ashland, and as no attempt was made below to settle the question of proper or necessary parties, it does not sufficiently appear that the plaintiff may not maintain the action for whatever damages he can show he has suffered by the breach of the bond.

The order sustaining the demurrer to the evidence is reversed and the cause remanded for further proceedings.