No. 21,221.

LEMUEL P. SNODGRASS, *Appellant*, v. THOMAS C. SNODGRASS and W. J. PIRTLE, *Appellees.*

SYLLABUS BY THE COURT.

1. QUIETING TITLE—*Bond to Quiet Title—Demurrer to Evidence Properly Sustained.* A testator who had purchased certain land, including the triangular piece in the northwest corner of a certain section north of a certain road, devised such land to his two sons, one to have the east half and the other the west half of the entire tract, as it was described in the deed. One of the brothers gave a bond in the sum of $1,500 to quiet in the plaintiff the title to the triangular strip "containing 122 acres, more or less." The testimony showed that the defendant Snodgrass brought a suit in his brother's name against himself and another, resulting in findings to the effect that in the deed to the ancestor and in the will the strip in question was bounded on the south by the wrong road, leaving 46 acres between the two roads, and making 76.45 acres instead of 122 acres comprised in the triangular strip. Instead of a decree quieting title to the 76.45 acres, the obligor in the bond tendered to his brother, the plaintiff, a quitclaim deed, he having asserted a mineral lease covering the strip in question and other lands. The plaintiff testified that he was not certain of the number of acres, but he was to take whatever number there were for the consideration named in the bond. *Held,* that the court committed no materially prejudicial error in sustaining a demurrer to the plaintiff's evidence.

2. SAME—*Tender of Quitclaim Deed—Title Quieted.* While the tender of the quitclaim deed was on condition that it be accepted in satisfaction of the bond, which condition had no proper place in such tender, still as

the deed itself effected the quieting of the title in the plaintiff to all the land he could rightly claim, such wrongful condition is held not to have rendered the tender void.

3. SAME—*Bond—Misdescription of Land—Reformation.* While no reformation of the bond was sought or made in this action, defendants were not materially harmed or prejudiced by the fact that the trial court treated the instrument as if reformed, so that the description of the tract in question would correspond to the deed to, and the will by, the ancestor.

4. SAME—*Evidence of Value of Certain Land Properly Rejected.* As the testimony showed that the plaintiff is not entitled to the forty-six acres between the two roads, it was not error to reject evidence of its value or evidence of the value of the land deeded in consideration of the bond sued on.

Appeal from Morris district court; ROSWELL L. KING, judge. Opinion filed January 12, 1918. Affirmed.

*Edwin Anderson,* of Council Grove, and *Frans E. Lindquist,* of Kansas City, Mo., for the appellant.

*M. B. Nicholson,* and *W. J. Pirtle,* both of Council Grove, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued on a "Bond for deed and to quiet title," and from an order sustaining a demurrer to his evidence he appeals.

Thomas S. Snodgrass died owning the south half of section 30 and a triangular tract in the northwest corner of section 31, township 17, range 7, and left a will devising it all to his two sons, Lemuel P. and Thomas C., to be by them divided as equally as possible, the south half of section 30—

"and the irregular triangled tract of 76 45-100 acres in the North-West part of Section 31 . . . , containing altogether 396 45-100 acres, more or less. The said Lemuel P. Snodgrass to have the west half of said two tracts, and the said Thomas C. Snodgrass to have the East half thereof."

Thomas C. Snodgrass conveyed his part of the land to John R. Veal, but his brother, Lemuel P., disputed the division, and, to settle the matter, it was agreed that he should give to Veal a quitclaim deed to the southeast quarter and 38 acres off the east side of the southwest quarter of section 30, and Thomas

C. was to quiet in Lemuel P. the title to the irregular tract in the northwest quarter of section 31, whereupon he entered into a bond in the sum of $1,500, which recited, among other things, that—

"This condition of the obligation is such, that said party of the first part, Thomas C. Snodgrass, has and hereby agrees to and with Lemuel P. Snodgrass to quiet the title to the following described real estate in Lemuel P. Snodgrass, to-wit: All land in North half of Section 31, Township 17, Range 7, lying north of the O. F. Barr Road which was established October 7th, A. D. 1885, containing 122 acres more or less, . . . said title to be quieted against Andrew Drummond, Thomas C. Snodgrass and all other necessary parties, their heirs, successors and assigns. The consideration for making and signing of this bond is the signing and delivering by the said Lemuel P. Snodgrass a quit-claim deed to John R. Veal, at the request and on the behalf of Thomas C. Snodgrass, to the Southeast quarter of Section 30, . . . Now, if the said Thomas C. Snodgrass, party of the first part, on or before the first day of July, A. D. 1916, succeed in quieting the title to the 122-acre triangular piece of land first herein described, to wit: All real estate in the North half of Section 31, . . . lying and situate north of the O. F. Barr road, which was established October 7th, A. D. 1885, containing 122 acres, more or less, in Lemuel P. Snodgrass, then this obligation shall be void, otherwise to remain in full force and effect."

The answer admits the execution of the bond, and alleges that in accordance therewith Thomas C. Snodgrass caused a suit to be brought and a judgment rendered quieting in Lemuel P. Snodgrass the title to the land designated in the bond—

"being all the land lying north and west of the public road across the northwest corner of section 31 . . . . , with the exception of a certain mineral lease in favor of said Thomas C. Snodgrass,"

and alleging the tender of a quitclaim deed to cover such leasehold interest. Further, that when the bond was executed there was a dispute as to the amount of land conveyed by E. G. Williams to Thomas C. Snodgrass and a dispute as to the location of the public road across the northwest corner of section 31, to correct which the bond was given.

The reply was a general denial and a special denial that Thomas C. Snodgrass had performed the conditions of the bond or quieted the title to the land designated therein.

On the trial it was shown that the suit to quiet title had been brought, resulting in findings to the effect that Andrew Drummond procured title by purchase and conveyance to all the

land lying south and east of the public road in section 31, containing 560½ acres, more or less; his deed being recorded January 2, 1902; that on January 25, 1901, there existed across the northwest corner of section 31 a fenced and traveled public highway which was in general use as a public highway and had been for several years. That in 1885 a road was surveyed and laid out some distance south and east of the former road, but was never opened, fenced, traveled, or improved. That when Drummond purchased, the owner intended to convey and did convey all of section 31 south and east of the fenced and traveled road; that Drummond entered into possession and had so remained and was the owner in fee simple of all the land in that section lying south and east of such road. It was further found that when the devisor purchased the part of section 31 of E. G. Williams, there was a mistake in the description, the grantor intending to convey and as a matter of fact conveying only that part north and west of the fenced and traveled road. It was decreed that this deed from Williams to the devisor be reformed as indicated, and that Thomas C. Snodgrass was the owner of a mineral lease covering, with other lands, all that part of section 31 conveyed to the devisor by Williams.

Lemuel P. Snodgrass testified that he agreed to give Mr. Veal a quitclaim deed to the 38 acres, for which Thomas C. was to quiet Lemuel P.'s title in the 46 acres of land lying between the two roads, worth from $25 to $30 an acre; that he supposed there were 122 acres in the triangular strip lying north of the O. F. Barr road, the one unopened and untraveled.

"I was not certain of the number of acres but whatever number there was I was to take for the 38 acres I deeded to Mr. Veal."

The trial court criticised Thomas C. Snodgrass for asserting his leasehold interest in the land to which he had given a bond to quiet title, but this was sought to be explained by the suggestion, that as his mineral lease covered other lands also he did not want its validity impaired by a decree touching the land in question, and, therefore, asserted his claim, and then tendered a quitclaim deed, instead of a decree quieting the title thereto.

The view was taken that the sons had no greater interest in the land than their father had when he died; that the father

claimed only 76.45 acres and not 122 acres, and in the devise designated it as 76.45 acres. That, as a matter of fact, the traveled road and not the Barr road was intended, and that title had been quieted to the land contemplated by the grantor who deeded to the father, and by the father who devised to the sons, and by the sons when they entered into the agreement recited in the bond.

The evidence supports these conclusions, and although the bond recites that all the land in section 31 north of the Barr road was to be quieted, the court acted on the theory that the will of the testator intended to follow the deed to him from the former owner, and that the real land in controversy and the tract covered by the bond is the land north of the traveled road and not that north of the Barr road.

While it seems that the deed to the testator was corrected in the quiet-title suit, the bond itself was not reformed in the case now before us, nor was such reformation requested, and the literal obligations of the bond as written were not performed. Counsel for the defendants say that the bond states very plainly that Thomas C. Snodgrass was only to quiet the title in Lemuel to whatever land there was contemplated by the will of his father, lying between the Barr road and the corner of section 1 as traveled and understood by the public. We do not find any such language in the bond. On the contrary, it clearly and repeatedly calls for all the real estate north of the Barr road. The land between the two roads amounts to 46 acres. Much discussion is had concerning the expression "more or less," but the real difficulty arises, not from the use of these words, but over the question as to which of the two roads marks the southeastern boundary of the triangular tract.

It is complained that Thomas, in the absence of his brother from court, took a default decree as to his mineral lease covering the land north of the traveled road. Also, that when he tendered the quitclaim deed it was on condition that it be accepted in full settlement of the bond and agreement in question; and such is the nature of the tender as shown by the record. Complaint is also made of the ruling striking from the record evidence of the value of the 46 acres between the two roads. Of course, if the plaintiff can rightfully demand

that his title be quieted to this tract, it was error to exclude the evidence of its value, for, while the bond was in the sum of $1,500, there is no claim that this was liquidated damages, and if the plaintiff could recover at all it would be only such actual damages as he could show, not exceeding the amount named in the bond (*Metz v. Clay*, 101 Kan. 45), and such actual damages would be determined by the value of the land to which his title was not quieted.

The value of the 38-acre tract was not material, and it was not error to reject evidence thereof.

Had the defendants desired to reform the bond and limit their obligation to the tract north of the traveled road, and had such reformation been made, the court would have been exactly right in holding in favor of the defendants.

Should the judgment be reversed and the cause remanded for further proceedings and a request be made for reformation, such reformation would inevitably follow, and should the cause be remanded with directions to reform the bond, such proceeding would only arrive at the very point already reached by the trial court. While, technically, the plaintiff suffered nominal damages, and while the tender of the quitclaim deed should not have been conditional, it is clear that by accepting it the plaintiff's title would, in fact, be quieted to all that really came to him by his father's will, and in this day of disregarding empty forms and mere technicalities it would be idle to reverse and remand.

The judgment is therefore affirmed.