No. 27,508.

ALLEN WEBBER, *Appellee*, v. J. C. UMBACK, *Appellant*.

(263 Pac. 786.)

SYLLABUS BY THE COURT.

1. SALES—*Action for Breach by Purchaser—Evidence of Damages.* In an action for damages for breach of a contract to purchase a number of hogs, plaintiff's evidence of damages was sufficiently established by showing the market value of hogs at Kansas City, the railway freight rate from his local shipping point to Kansas City, and any other proper and necessary expense incidental to the shipment and sale of hogs, and by a computation made by the jury based on the data thus shown; and a verdict and judgment thereon was proper.

2. EVIDENCE—*Market Value — Newspaper Reports.* Rule followed that live stock market reports and reports of sales of live stock as published in a well known trade newspaper, where neither suspicion nor challenge of the accuracy of such reports is fairly raised, are competent evidence to show the market value of hogs in an action for damages for breach of a contract to purchase them.

Appeal from Ford district court; KARL MILLER, judge. Opinion filed February 11, 1928. Affirmed.

*Walter L. Bullock,* of Dodge City, for the appellant.

*Lane A. Dutton,* of Dodge City, and *R. S. Field,* of Syracuse, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover damages for breach of a contract of purchase and sale.

The facts were these: Defendant Umback purchased 100 hogs from plaintiff for $2,300. The hogs were to be selected from plaintiff's herd of 150 or 160 head. Defendant came to plaintiff's farm in Ford county to select the hogs, and when he had chosen 53 of them he discovered that he had made a poor bargain—that there

Evidence, 22 C. J. p. 188 n. 19; 23 C. J. pp. 59 n. 22, 78 n. 5; 16 L. R. A. n. s. 758; 10 R. C. L. 1167. Sales, 35 Cyc. 591 n. 38; 34 A. L. R. 114; 24 R. C. L. 116.

were not enough large hogs to make up the hundred he had pur-
chased, so he rescinded the contract. Plaintiff thereupon shipped
100 of his largest hogs to Kansas City and sold them at the best
price available, and after paying the railway freight rate from
Dodge City, plaintiff's nearest shipping point, together with other
proper and usual expenses, he failed to realize the $2,300 which de-
fendant had agreed to pay for them, and sued defendant for the
difference—a matter of $490.30.

A verdict and judgment in plaintiff's behalf were rendered in
the sum of $296.88.

Defendant appeals, assigning two errors—in overruling his de-
murrer to plaintiff's evidence, and in the admission of incompetent
evidence. A third assignment of error, that the verdict was not
sustained by sufficient evidence, is merely a repetition of the point
urged against the ruling on the demurrer.

It seems to be defendant's theory that as there was no market
for hogs at Dodge City, there was in consequence no market value
of hogs at that point and no damage proved. That does not follow.
The trial court and jury properly took into consideration the fact
of common knowledge that the principal hog market for Ford county
as for nearly the whole state was at Kansas City (*State v. Kelly,* 71
Kan. 811, 820 *et seq.,* 81 Pac. 450; *Chaput v. Demars,* 120 Kan. 612,
244 Pac. 1042; *State v. Bell,* 121 Kan. 866, 869, 250 Pac. 281; 23 C.
J. 59, 78); and at least one proper way to ascertain the market
value of hogs in Ford county is to ascertain their market value in
Kansas City and deduct freight charges from the local shipping
point in Ford county (Dodge City, apparently) to Kansas City and
any other necessary expense pertaining to the sale of the hogs in
Kansas City, and the result would show with sufficient precision the
market value in Dodge City. (*Evans v. Moseley,* 84 Kan. 322, 114
Pac. 374; *Coöperative Association v. Schultze,* 112 Kan. 675, 212
Pac. 646.)

The facts concerning the Kansas City market price for hogs were
shown by producing a copy of the *Daily Drovers Telegram,* a well
known Kansas City newspaper, which is widely read because of its
exhaustive reports of all matters of general interest to growers and
dealers in live stock throughout the trade territory tributary to
Kansas City. This paper gave the market price for hogs on the day
plaintiff's hogs arrived, and indeed it reported the actual sales of
plaintiff's hogs on that day's market. This was competent evidence,

and defendant's excerpts from forty- and fifty-year-old decisions to the contrary are worthless nowadays. (*Ray v. Railway Co.*, 90 Kan. 244, 248, 133 Pac. 847; *Poultry Co. v. Railroad Co.*, 99 Kan. 540, 163 Pac. 448; *Nelson v. Railroad Co.*, 116 Kan. 35, 225 Pac. 1065; 22 C. J. 188; 10 R. C. L. 1167; 2 R. C. L. Supp. 1163.)

Defendant's objections to the judgment cannot be sustained, and it is therefore affirmed.