**SONKEN–GALAMBA CORPORATION et al. v. BUTLER IRON & STEEL CO., Inc.**

No. 11878.

Circuit Court of Appeals, Eighth Circuit.

April 30, 1941.

William G. Boatright, of Kansas City, Mo. (Irvine E. Ungerman, of Tulsa, Okl., and I. J. Ringolsky and Harry L. Jacobs, both of Kansas City, Mo., on the brief), for appellants.

Maurice J. O'Sullivan, of Kansas City, Mo. (David R. Milsten, of Tulsa, Okl., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment entered in an action brought by appellee against appellants to recover damages for the breach of a contract of sale by the buyer. A jury was waived and the action was tried to the court, resulting in findings of fact and conclusions of law in favor of plaintiff on all the issues. The parties will be referred to as they appeared below.

The contract was for the purchase and sale of certain scrap iron and by its terms plaintiff agreed to sell and defendant Berry agreed to purchase the scrap iron coming from 113 condemned oil tanks at Romana, Oklahoma, and Neodesha, Kansas, at $16 per ton f.o.b. cars, with privilege to the buyer of hauling such tonnage at price of $15.50 per ton at present location. $15,000 was deposited on the purchase price, and deliveries were to be made at the rate of 750 tons per month commencing in June, 1937. While the contract was made in the name of W. C. Berry as party of the second part, it is conceded that he executed the same on behalf of the Sonken-Galamba Corporation as purchaser, and the court found that defendants were jointly and severally interested. Defendants elected to haul the scrap iron in their own trucks at $15.50 per ton. Performance of the contract continued until March, 1938, when a controversy developed and the contract was modified by reducing the price in the amount of $1 per ton and the further agreement that, "It is understood that nothing herein shall vary any other terms of the original contract dated April 23, 1937; however W. C. Berry agrees to either move all materials, except angles whose rivets have not been backed out, on or before May 1st or pay for same under the terms of said contract subject only to the stipulation herein of his receiving $1.00 per ton reduction, which is in lieu of cleaning sketch plates, bottoms and ring sheets, it being understood that the May 1st date is, of course, subject to strikes and embargo as provided in the original agreement."

Defendants did not remove all of the material before May 1, 1938, the last material taken and paid for being on May 13, 1938. The total materials taken and paid for amounted to 7,500.337 net tons. The deposit totaling $15,000 made by defendants was received by plaintiff, and the materials taken and accepted were sufficient to exhaust this deposit and no more. There were no strikes nor embargoes to interfere with the performance of the contract. On July 7, 1938, plaintiff made demand for payment under the contract as modified and gave notice that unless the terms of the contract were performed on or before July 15, 1938, it would take legal action against defendants. Defendants neither removed any more of the scrap iron before July 15, 1938, nor made payment for what they had not already received. They gave no shipping instructions to plaintiff for shipping or removing any of the material, and the total balance of the material on hand for which defendants had contracted amounted to 2,450.663 net tons. By the terms of the contract plaintiff would have received $14.50 per ton, or a total of $34,500.57 for the balance of this material. The best available market price on or about July 15, 1938, was $6 per ton, so that

the difference between the contract price and the market price of the material not accepted, on or about July 15, 1938, was $22,055.94.

It was claimed by defendants that weather conditions prevented the performance of the contract by them within the time limited by the contract, but that on August 12, 1938, they sent a truck for part of this material but were denied delivery by the plaintiff. On this issue the court found that the truck was sent without previous notice of any kind to plaintiff of defendants' intention so to do, and that it was not sent in good faith but was done by the defendants with the hope and expectation that it might be of some aid to them in the defense of any litigation instituted by plaintiff against them on account of their breach of the agreements; that the acts of the watchman in charge of certain of the material in refusing to permit defendants to take any part of it was not an act of refusal by plaintiff, and that defendants were not on July 15, 1938, or at any other time thereafter, ready and willing to perform or carry out any agreement binding on them under the terms thereof. The court found that while there had been unusual rains, such condition had not been continuous and that defendants might have hauled the material had they attempted in good faith so to do between May 1, 1938, and July 15, 1938. The court also found that the written notice sent by plaintiff to defendants demanding performance allowed a reasonable time as a matter of fact and that they could have paid plaintiff the balance due on the contract on or before July 15, 1938, had they desired in good faith so to do.

On this appeal defendants contend (1) that the court erred in holding that they breached the contract on July 15, 1938, because plaintiff waived the time for performance up to July 7 and its demand for performance within seven days thereafter was not a reasonable time; (2) that the court erred in not holding that plaintiff breached the contract on August 12, 1938, by refusing to permit defendants to remove and pay for the remaining scrap iron which was the subject of the contract because the demand of July 7 was unreasonable, and hence, the defendants had a right under the contract to remove and pay for the scrap iron; (3) that the court erred in holding that the measure of damages was the difference between the contract price and the market price and in holding that the resale alleged to have taken place was immaterial.

The contention that the court erred in holding the contract to have been breached on July 15, 1937, is bottomed on the assertion that the demand for performance made on July 7, 1938, did not allow a reasonable time for defendants to perform. The final performance date fixed by the written contract was May 1, 1938. The court found the plaintiff had waived time of performance up to July 7, 1938. On that date, plaintiff's attorney wrote defendants a letter demanding payment under the agreement. The letter, among other things, contained the following: "By your own conduct you leave us no alternative but to advise you that unless the terms of the contract are carried out on or before July 15, 1938, we will be forced to take such legal action as we deem necessary to protect our client's interest." It is claimed by defendants that having waived performance, it was incumbent upon plaintiff to grant a reasonable time for defendants to remove the scrap iron and pay for it. The supplemental agreement of March 11, 1938, contained provision that, "W. C. Berry agrees to either move all materials, except angles whose rivets have not been backed out, on or before May 1st or pay for same under the terms of said contract." Confessedly, he had not removed and paid for the material. After that date his obligation was to pay for the material. The demand made upon defendants did not purport to require defendant to remove the material. It required only the payment of the purchase price. The court found that the time specified in the written notice sent by plaintiff to defendants was a reasonable time as a matter of fact and that defendants could have paid the plaintiffs the balance due under the contract on or before July 15, 1938, if they had desired in good faith so to do. Defendants were obligated to pay under the contract whether or not the materials were removed. It was the manifest intent of the parties, as the trial court concluded, that payment for the materials was to be made regardless of whether the removal of the materials was made by May 1st. So far as appears from the record, it was immaterial to plaintiff whether defendants permitted the material to remain on the premises after May 1st. If they did not remove all the material by May 1st, they were required by the supplemental contract to pay the purchase price at that time. The time for payment was made unconditional on or after May 1st. Before that time it was conditioned upon removal of the material.

The plaintiff was interested in prompt payment for the materials sold, and in the original contract the buyer was obligated to a minimum shipment of 750 tons per month commencing in June, 1937. The same purpose to force a termination of the contract by payment to the seller is apparent by the provisions of the contract of March 11, 1938, providing for its termination by payment of the balance due by May 1st. Time of payment was of the essence of the contract. It is not accurate to say that the contract provided equal alternatives; towit, to take and pay for or to pay for, because the first includes the latter. If these provisions should be construed as equal alternatives, then the independent promise to pay loses significance. In other words, it would add nothing to the contract obligation. Construed as an absolute promise of payment on May 1st, whether the defendants had removed the material or not, it has materiality. All provisions of a contract are to be given the meaning expressed by their language unless it plainly appears that only a part of it conveys the meaning intended by the parties. Bluefields Fruit & S. S. Co. v. Western Assurance Co., 5 Cir., 265 F. 221. Defendants at no time after the breach of the contract were ready or willing to perform it. They requested no extension of time, and in these circumstances it is difficult to believe that they were prejudiced by the length of time fixed for performance of a contract which they were in no event intending to perform. Drollinger v. Carson, 97 Kan. 502, 155 P. 923. Defendants were not injured by failure of the plaintiff promptly to insist upon the default which occurred May 1st. In Knipe v. Troika, 92 Kan. 549, 141 P. 557, 558, cited by defendants, it is said:

"The defendants induced the plaintiff to incur expense in perfecting the abstract after the period prescribed in the contract, thus warranting the inference that it would be accepted if their requirements were complied with in a reasonable time."

The Kansas case was a suit in equity for specific performance and involved the elements of an estoppel. Here, the specific provisions of the supplemental contract clearly indicate that time is of its essence. The letter which is pointed to as evidence of waiver itself fixed a definite date for performance and this date became likewise of the essence. Moore v. Markel, 112 Neb. 743, 201 N.W. 147. We are of the view that the court correctly construed the contract.

The contention that plaintiff breached the contract on August 12, 1938, by refusing to permit defendants to remove the remaining material is based on the assumption that defendants at that time were not in default. Being in default they could claim no right to perform as against the plaintiff after breach. Restatement Law of Contracts, § 397. Whether or not therefore there was a refusal to permit removal on August 12th is immaterial. A conversation between the attorney representing defendants at Tulsa, Oklahoma, and the attorney representing plaintiff at the same place is referred to as constituting a waiver of the default on July 15. This conversation occurred July 20 or 21, 1938. Plaintiff's attorney said that if Berry did not take the rest of the stuff and pay for it he was going to sell it at private sale and credit Berry with the proceeds. He asked if defendants' counsel would find out from Berry whether he wanted to bid on the merchandise, and a few days later advised that he was going to put it up and sell it. Counsel for defendants replied that Mr. Berry took the position that it was his merchandise and that he was not going to bid on it again. Based upon this incident, defendants argue that plaintiff recognized the contract as still open for performance as late as July 20. Here, we have already held, the contract was breached by failure to pay within the stipulated time even as extended. The conversation referred to did not have the effect of making a new contract. Neither did it constitute a compromise nor an accord and satisfaction. The rules relating to anticipatory breaches and the doctrine of election of remedies have no importance where a breach of contract consisting of a failure to pay money at the appointed time has occurred.

It is finally urged that the court adopted an erroneous measure of damages. In this connection it is argued that plaintiff having elected to rescind, and a resale having been attempted and having failed prior to August 12, 1938, when defendants sent a truck out for some material they should have been permitted to take the material so as to minimize the damages. The market had fallen and defendants do not make it appear that the damages as measured are any greater than their loss would have been had plaintiff permitted them to remove the property. The court allowed $6 per ton as the reasonable market value at the location on or about July 15, 1938, and 50¢ per ton as the cost of handling

f.o.b. cars. In the absence of a showing that defendants had suffered pecuniary loss the question is academic.

It is, however, contended that assuming a breach of the contract to have occurred on July 15, plaintiff elected to sell the remaining undelivered scrap iron and to sue for the difference between the contract price and the price received on sale, and that having elected to pursue that remedy, the election became binding and it was error to allow plaintiff to recover as damages the difference between the contract price and the market value. The lower court held that under the law of Kansas it was immaterial whether the scrap iron was resold and that the proper measure of damages was the difference between the contract price and the market price at the time the contract was breached. The court found as a fact that plaintiff and Horwitz Iron and Metal Company signed a written form of agreement on July 30, 1938, for sale of this scrap iron, but that the agreement never became operative but was abandoned by mutual consent because of a failure of a meeting of the minds with respect to the nature, kind and character of the material remaining on hand. The court found that, "The parties thereto under the facts disclosed by the evidence did not, in fact, reach a meeting of minds with respect to the subject matter of said contract." This finding of fact, which is sustained by substantial evidence, removes from consideration the contention that the plaintiff elected to resell the undelivered property. What the rights of the parties would have been had the sale been completed need not be considered. There is no inconsistency of remedies in announcing an intention to make a resale or in unsuccessfully attempting to resell and in establishing the market value in an action for damages by evidence of market value. In each instance the seller has elected to hold the buyer liable in damages based on the difference between the contract price and the market value. A resale is but one method of determining the market price. The methods of establishing the market value by resale and of determining it by evidence other than by resale are analogous ways of establishing damages. They are designed to and should reach the same result. Pursuing consistent remedies alternatively to achieve a lawful end does not constitute an election of remedies. Kansas City Live Stock Commission v. Hamlin Bank, 79 Kan. 761, 101 P. 617, 24 L.R.A.,N.S., 490, 17 Ann.Cas. 956. The measure of damages for a breach of a contract to purchase is, under the rule established by the Kansas decisions, ordinarily the difference between the contract price and the market value of the goods which were not paid for. Bennett v. Hatfield, 115 Kan. 129, 222 P. 61; Webber v. Umback, 125 Kan. 117, 263 P. 786; Rock v. Gaede, 111 Kan. 214, 207 P. 323, 27 A.L.R. 1152; Evans v. Moseley, 84 Kan. 322, 114 P. 374; Neiswender v. Bolen, 113 Kan. 271, 214 P. 96; Brumley v. Thompson, 106 Kan. 67, 186 P. 986; International T. & R. Corp. v. Benscheidt, 141 Kan. 416, 41 P.2d 737.

We find no reversible error in the trial of this case, and the judgment appealed from is therefore affirmed.