HANSON & PARKER, LIMITED, *vs.* C. J. WITTENBERG
& another.

SAME *vs.* SAME.

C. J. WITTENBERG & another *vs.* HANSON & PARKER,
LIMITED.

Suffolk.     January 21, 1910. — February 25, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Contract,* Performance and breach, Rescission.  *Sale.  Evidence,* Competency.  *Damages,* In contract.

Where there are two independent contracts between the same persons for the
furnishing of certain goods of the same kind and quality at different times, the
fact that the seller has committed a breach of the first contract by furnishing
goods inferior to those required by the contract and by failing upon demand to
furnish goods of the kind and quality required, does not justify the buyer in
assuming that the seller also will break his second contract for a further supply
of like goods, and, although the buyer may be reasonably apprehensive of a
like breach of the second contract, he has no right to rescind or repudiate the
second contract before it has been broken by the seller.

In an action for an alleged breach of a contract to furnish a certain commodity at
an agreed price, upon the question whether the contract sued upon had been
rescinded, evidence of the acts and declarations of the parties and of circum-
stances which might have furnished a motive for their conduct is competent,
and, if it appears that there had been an advance in the price of the commodity
or that it could not be obtained easily in the market, this may tend to show that
it was not for the interest of the seller to insist upon performance, so that his
silence, after a proposal of a rescission of the contract had been made to him
by the buyer, until the time for performance had elapsed may justify a finding
that he acquiesced in the proposal and that the contract was cancelled by mutual
consent.

In an action for a breach of a contract to ship certain coal to the plaintiff in
barges sent by the plaintiff to receive it, in delivering coal of a kind and quality
inferior to that called for by the contract, and for a later breach in failing to de-
liver coal of the required kind and quality, if it appears that the defendant, when
he shipped the part of the coal which was shipped to the plaintiff, knew that it
was not the kind of coal which the plaintiff had purchased and had insisted on
having and also knew that until the arrival of the coal the plaintiff would be
ignorant of the substitution, and if it also appears that the defendant fully
understood that the port of shipment was merely a place for transportation to
other markets, and that upon the receipt of the coal at its port of destination
it was to be resold by the plaintiff, and if it is shown that by a usage of
the trade known to the parties the buyer does not inspect the coal when
shipped in his vessels but is expected to rely upon the seller's promise to deliver
coal of the quality called for by the contract, it would be unfair to limit the
plaintiff's damages to the difference between the contract price and the market

price at the port of shipment, and the measure of damages must include not only the difference in price in the market at the plaintiff's place of business to which the coal was shipped and to be shipped, but also the expenses and the necessary disbursements incurred by the plaintiff by reason of the defendant's breach of contract.

THREE ACTIONS OF CONTRACT, the first two brought by Hanson and Parker, Limited, a corporation engaged in the wholesale coal business in Boston with a branch office in New York, against C. J. Wittenberg of New York, an agent for certain West Virginia coal mines, and the High Carbon Coal and Coke Company, one of these actions being for damages for an alleged breach of a contract to deliver to the plaintiff coal of a certain kind and quality and the other action being on an account annexed for $1,483.53 for money paid for insurance, freight, towing and shifting, and the third action brought by C. J. Wittenberg and the High Carbon Coal and Coke Company against Hanson and Parker, Limited, with counts for the price of coal sold and delivered and for damages for a breach of contract in refusing coal on its delivery. Writs in the first two actions dated May 7 and May 23, 1900, and writ in the third action dated September 10, 1903.

By agreement of the parties the three cases were referred to Roland W. Boyden, Esquire, as auditor, and also by agreement of the parties C. J. Wittenberg and the High Carbon Coal and Coke Company were treated as one and the same person and were referred to as C. J. Wittenberg alone. Later the three cases were heard together by *Fessenden*, J., without a jury, and the only evidence offered by either party was the auditor's report.

In the first two actions Hanson and Parker, Limited, sought to recover damages for the delivery of two cargoes of inferior coal which were accepted and paid for; for the non-delivery of the remainder of the coal called for by the first contract, three cargoes having been tendered and refused on account of their inferior quality; for expenses paid upon two of these cargoes; and for loss of profits upon resales of part of the coal. In the third action Wittenberg sought to recover damages for the failure of Hanson and Parker, Limited, to receive and pay for the entire quantity of coal specified in the two contracts.

Hanson and Parker, Limited, and Wittenberg entered into two contracts.   The first, which was made on April 7, 1900, provided for the sale by Wittenberg to Hanson and Parker, Limited, of ten thousand tons of New River coal at $2.50 a ton, f. o. b. vessel at Newport News, to be delivered five thousand tons in April and five thousand tons in May.   The second, which was made on April 13, 1900, provided for a further sale of ten thousand tons of the same kind of coal at $2.57 per ton, to be delivered five thousand tons in May and five thousand tons in June.

The auditor's report contained the following finding in regard to the custom in the coal trade : " The custom of the coal trade requires, in case of sales of coal for shipment f. o. b. Newport News, that the purchaser shall charter vessels to receive the coal at the railroad loading piers at Newport News, and shall notify the seller.   The coal received from the mines by the railroad, and transported to its piers, is loaded in such vessels by the railroad upon instructions from the seller.   A certain leeway is allowed either party upon a contract for a definite number of tons, a variation of five to ten per cent either way being permitted. The purchaser is not expected to inspect the coal at the time of loading."

The following facts and also others which are stated in the opinion appeared by the auditor's report :

Hanson and Parker, Limited, ordered from Wittenberg six cargoes of New River coal, amounting to about twelve thousand tons, and sent the vessels to Newport News to be loaded. Wittenberg loaded five of these vessels with an inferior grade of coal not New River coal.   Hanson and Parker, Limited, paid for the first two cargoes, which arrived at Boston about April 27, and were broken into before it appeared that they did not contain New River coal.   A custom of the coal trade prevents the return of a cargo by the buyer to the seller after bulk has been broken, and Hanson and Parker, Limited, retained the first two cargoes.   At the time the quality of the coal in these cargoes was discovered, the third, fourth and fifth vessels were loaded, and had left Newport News for Boston.   Hanson and Parker, Limited, then had the bills of lading for the third and fourth cargoes, but never received a bill of lading for the fifth cargo.   At this time the sixth vessel had not arrived at New-

port News. As soon as the quality of the coal in the first two cargoes was discovered, Hanson and Parker, Limited, and Wittenberg had a conference, in which it appeared that the third, fourth and fifth cargoes consisted of coal like that in the first two vessels, and that Wittenberg could not deliver New River coal in accordance with his agreements. Hanson and Parker, Limited, thereupon refused to accept the third, fourth and fifth cargoes or any coal similar to them, sent the sixth vessel to another mine agent for her cargo, and cancelled the contract of April 13. Wittenberg took back the bills of lading for the third and fourth cargoes, did not tender that for the fifth, and acquiesced in the cancellation of the second contract.

The fair market value of New River coal at Boston was $3.40 per ton between April 19 and May 10, 1900, $3.35 per ton between May 10 and May 31, 1900, and $3.25 per ton between June 1 and June 30, 1900, and at Newport News the fair market value was seventy-five cents per ton less. The fair market value of the inferior coal in the first two cargoes was $2.40 per ton at Boston. There was no evidence of its value at Newport News. Hanson and Parker, Limited, paid out in necessary expenses upon the third and fourth cargoes, which were sold by Wittenberg for his own benefit, the sum of $1,453.07.

At the close of the evidence, as contained in the auditor's report, C. J. Wittenberg asked the judge to make the following findings and rulings, which were disposed of by the judge as stated after each:

"1. Where two contracts between the same two parties are distinct and to be performed at different times, the non-performance of one is no defense to an action on the other." This ruling was made by the judge.

"2. The contract of April 13th was a different and separate contract to that of April 10th." This ruling was made by the judge.

"3. No failure on the part of Wittenberg to perform the contract of April 10th afforded a right to Hanson and Parker, Limited, to refuse to perform the contract of April 13th." This ruling was made by the judge.

"4. Hanson and Parker, Limited, had no right to require Mr. Wittenberg's assurances as to the manner of his performing

the contract of April 13th before the time of performance had arrived according to the terms of said contract.

'5. Wittenberg was not obliged to give any assurances or make any promises as to his manner of performing the contract of April 13th at any time before the time for performance on his part had arrived according to the terms of said contract."

As to requests 4 and 5 the judge found and ruled that Hanson and Parker, Limited, was justified in calling for assurances from Wittenberg.

" 6. Where contracts for the sale of personal property are broken, by a vendor failing to deliver the property according to the terms of the bargain, the measure of damages is the difference between the contract price and the market price of the article at the time when and the place where it should have been delivered." As to this request the judge ruled that, although it stated the general rule correctly, the present case did not come within that general rule.

" 7. The measure of damages for the failure of Wittenberg to deliver the coal to Hanson and Parker, Limited, is the difference between the contract price and market price at Newport News at the various times when it was his duty to deliver it." Refused.

" 8. Where coal has been accepted and delivered by Wittenberg to Hanson and Parker, Limited, under these contracts, if the coal delivered did not comply with the terms of the contract, the measure of damage is the difference between the value of the coal delivered at the place and time when it was so delivered, and the value of the coal which should have been delivered according to the terms of the contract." Refused.

" 9. The measure of damages to be awarded to Hanson and Parker, Limited, for failure to deliver coal according to contract in barges 11 and 16,* is the difference between the price of New River coal at Newport News at the time of the loading of said barges and the value or market price of the coal actually delivered in said barges." Refused.

" 10. There being no evidence as to the value of the coal delivered at Newport News the court cannot award any damages to Hanson and Parker, Limited, upon the cargoes in barges 11 and 16." Refused.

---

* These barges arrived at Boston where the coal was unloaded.

" 11. The market price of New River coal and other coals in Boston is immaterial and furnishes no measure of damages in this case." Refused.

" 12. The measure of damages for failure of Wittenberg to deliver coal to Hanson and Parker, Limited, is the difference between the contract price and the market price of New River coal at Newport News." Refused.

" 13. The measure of damages with reference to the cargoes in barges 11 and 16 is the difference between the market value at Newport News of the coal actually delivered, and the market value of New River coal, and there being no evidence as to such difference, there can be no recovery as to the coal delivered in barges 11 and 16. " Refused.

" 14. Hanson and Parker, Limited, are not entitled to recovery for loss of profits." This was found and ruled by the judge.

The requests numbered from 15 to 19 inclusive related to loss of profits, and were ruled by the judge to be immaterial in view of his finding and ruling upon request 14.

" 20. Hanson and Parker, Limited, are not entitled to recover any of the expenses incurred by them in connection with the coal after it left Newport News." Refused.

The requests from 21 to 29 inclusive were for rulings that Hanson and Parker, Limited, were not entitled to recover damages against Wittenberg under any of nine different items of the auditor's report. Each of these requests was refused.

" 30. Even if the court should find that the two letters of April 10th and April 13th constituted but a single contract between Hanson and Parker, Limited, and Wittenberg, then the same was a divisible contract, and a failure of the vendor to deliver the coal on certain instalments of the contract in accordance with the terms thereof is not such a breach of the entire contract as to excuse the vendee from taking and paying for the coal on the remaining instalments." Ruled to be immaterial in view of the finding and ruling under request 2.

" 31. Wittenberg is entitled to recover as damages the difference between the contract price and the market at Newport News on ten thousand tons of coal which Hanson and Parker, Limited, refused to accept and pay for in accordance with the order of April 13th." Refused.

" 32. The contract of April 13th has never been cancelled."
Refused.

The judge found for the plaintiff Hanson and Parker, Limited,
in the sum of $5,944.09 as damages in the first action and in the
sum of $2,270.79 as damages in the second action, and found for
the defendant Hanson and Parker, Limited, in the third action.

In assessing damages, the judge allowed Hanson and Parker,
Limited, in the first action the difference between the values at
Boston of the coal delivered in the first two cargoes and of New
River coal, and the difference between the value of New River
coal at Boston and the contract price plus the cost of transporta-
tion of the amount of coal in the third, fourth and fifth cargoes;
and in the second action he allowed the expenses paid by Hanson
and Parker, Limited, upon the third and fourth cargoes.

To the refusals to find and rule as requested and to the find-
ings and rulings made by the judge, C. J. Wittenberg alleged
exceptions.

*L. M. Friedman,* for Wittenberg.

*A. B. White,* for Hanson and Parker, Limited.

BRALEY, J.    The only evidence introduced at the trial was
the auditor's report, and, his findings of fact evidently having
been affirmed by the judge who tried the case without a jury,
the questions raised by the exceptions rest upon the refusals to
rule, and the rulings, as to the effect of the evidence.   *Beers* v.
*Wardwell,* 198 Mass. 236.   During the period covered by the
transactions the plaintiff corporation was engaged as a jobber in
selling coal at wholesale, with its principal office in Boston.   If
occasional sales were made elsewhere, the bulk of its trade was
supplying customers within the territory of which that city, as
described in the report, is the usual commercial centre of distri-
bution.   After verbal negotiations, it entered into two contracts
in writing with the defendant Wittenberg, who resided and did
business in another State, for the delivery of ten thousand tons
of " steam coal " under each contract.   The coal was to be de-
livered at Newport News, Virginia, by the railroad as directed
by the seller, free on board vessels sent by the buyer, by whom
the expenses of transportation were to be paid.   By the first
contract an option as to the kinds of coal was given, and,
although the second contract omits this clause, the auditor

reports, that the plaintiff contracted only for "New River coal," which the defendant engaged to furnish.

In the performance of the first contract, the defendant concedes that the shipments were not of the kind selected, but the cargoes were composed of a mixture of New River coal and Kanawha coal, in which the latter largely predominated. Upon the arrival of the first cargo, a part was discharged before the plaintiff ascertained its inferior quality. Interviews followed between the parties, but no adjustment of their differences was reached, and, the defendant's agent having stated that the remaining cargoes in transit were similar, the plaintiff notified the defendant that it would not accept them. Because of the failure to comply with the terms of the first contract, the corporation recalled the vessel it had sent for the small balance remaining of the first purchase and for the coal to be shipped under the second contract, and alleged as a defense in the action against it by Wittenberg for damages for the refusal to perform, that this contract had been cancelled.

The contracts, as the judge ruled, no doubt were distinct and not dependent. *Turner* v. *Rogers*, 121 Mass. 12. If the first had been broken by the seller, it did not follow he would commit a breach of the second contract, although a refusal to perform would have justified an immediate rescission by the plaintiff. *Daniels* v. *Newton*, 114 Mass. 530, 533. *Menage* v. *Rosenthal*, 187 Mass. 470. But, while the defendant's conduct tended strongly to weaken confidence in his intention to keep a similar agreement in the future, the plaintiff's anticipation of non-performance, however reasonable under the circumstances, would not have been a justification for its rescinding or repudiating the second contract. *Porter* v. *American Legion of Honor*, 183 Mass. 326.

An executory bilateral contract, however, may be rescinded or cancelled by mutual consent of the parties. They may discharge it in part by a new agreement modifying its terms, or agree to abrogate it so that both will be discharged from performance. The original consideration supports the modification, while the agreement of each to annul is a sufficient consideration for an abandonment. *Earnshaw* v. *Whittemore*, 194 Mass. 187, 191, and cases cited. *Cutter* v. *Cochrane*, 116 Mass. 408, 410. But

where, as in the present case, the parties are not in accord as to
what was done, the question whether they have reached such an
understanding is one of fact.  *Johnson* v. *Reed*, 9 Mass. 78, 84.
*Cutter* v. *Cochrane*, 116 Mass. 408, 410.    *Hobbs* v. *Columbia
Falls Brick Co.* 157 Mass. 109.  In proof of consent to rescis-
sion, it is competent to show acts, declarations and motives of
the parties.  If it appears that there has been an advance in
price, or that the commodity cannot be obtained easily in the
market, these facts may furnish evidence that it was not for
the interest of the seller to insist upon performance.  *Smith* v.
*Glover*, 50 Minn. 58.    *Chouteau* v. *Jupiter Iron Works*, 94 Mo.
388.   The auditor, who saw the witnesses and heard the evi-
dence, reports that although Wittenberg neither expressly as-
sented nor dissented, he did not protest at the time, but
remained silent until the period of performance had elapsed.
In the meantime, the market price had advanced beyond the
contract price, and New River coal had become scarce, or could
not be obtained.   In view of his attitude and these conditions,
the auditor finds that the seller acquiesced, and that the second
contract was cancelled by mutual consent.   The judge, having
been warranted in finding accordingly, rightly refused to give
the plaintiff Wittenberg's thirty-first and thirty-second requests,
and, having found for the defendant, the fourth and fifth re-
quests became immaterial.

The remaining exceptions relate wholly to the measure of
damages recoverable in the actions for failure to perform the
first contract.   The ordinary rule, which often has been stated,
is that where the seller fails to deliver, the buyer can recover
for breach of the promise the difference between the contract
price and the market value at the place of delivery of the goods,
wares or merchandise at the time the contract is broken.   In
mercantile transactions this difference generally will measure
the actual loss sustained.   But as damages are assessed as com-
pensation, the amount awarded should be such as the parties at
the time of the making of the contract are supposed to have
contemplated naturally would follow from the probable con-
sequences of a breach.   *Merrimack Manuf. Co.* v. *Quintard*,
107 Mass. 127.    *Abbott* v. *Hapgood*, 150 Mass. 248.    *Edgar* v.
*Joseph Breck & Sons Corp.* 172 Mass. 581.    *Speirs* v. *Union*

*Drop Forge Co.* 180 Mass. 87.   *Weston* v. *Boston & Maine Rail-road,* 190 Mass. 298.   *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 445, 446.   *Boyden* v. *Hill,* 198 Mass. 477.   *C. W. Hunt Co.* v. *Boston Elevated Railway,* 199 Mass. 220.   And this may be proved by parol evidence, even if the contract is in writing.   *Globe Refining Co.* v. *Landa Cotton Oil Co.* 190 U. S. 540, 544.   A recurrence to the evidence makes it plain that the port of shipment was designated only as a place for transportation to such other markets as the buyer might direct, and the defendant fully understood that upon receipt at the port of destination the coal was to be resold by the plaintiff.   By a general usage of the trade, which the auditor reports was known to the parties and which consequently was incorporated in the contract, the buyer does not inspect the coal when shipped, but is expected to rely upon the seller's promise to deliver coal of the quality called for by the contract.   *A. J. Tower Co.* v. *Southern Pacific Co.* 184 Mass. 472, 475; *S. C.* 195 Mass. 157.   While it might rely on the presumption that the defendant would not violate his agreement, the plaintiff was not bound upon the arrival of the cargoes to accept the coal if it was not the kind purchased, and it is immaterial whether title passed when it was put on board the vessels. If it did pass, as the defendant assumes, the sale nevertheless was on an implied warranty that the coal should be of the quality ordered.   *Alden* v. *Hart,* 161 Mass. 576.   *Fullam* v. *Wright & Colton Wire Cloth Co.* 196 Mass. 474.   See *Kemensky* v. *Chapin,* 193 Mass. 500, 506; *Farrell* v. *Manhattan Market Co.* 198 Mass. 271; *West End Manuf. Co.* v. *P. R. Warren Co.* 198 Mass. 320. It is abundantly shown that the defendant, not only knew that the coal he directed the railroad to deliver was not the kind purchased and which under the option the plaintiff insisted upon having, notwithstanding his representations that Kanawha coal was equally serviceable, but also knew that until the arrival of the coal the plaintiff would be ignorant of the deception.   The market value, at the time the coal arrived and was ready for sale in the ordinary course of its trade, is what it would have been worth to the plaintiff.   To limit the plaintiff's recovery to the difference between the purchase price and the market price at the port of shipment, would enable the defendant to escape without making full compensation for the losses directly attributable to his

violation of the agreement. The measure of damages assessed by the judge, therefore, was rightly held to include, not only the difference in price in the market at the plaintiff's place of business, but also the expenses and other necessary disbursements incurred in transportation, as stated and allowed by the auditor in his schedule of items. *Cutting* v. *Grand Trunk Railway*, 13 Allen, 381, 384, 385. *Johnston* v. *Faxon*, 172 Mass. 466. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220. *Maryland Ice Co.* v. *Arctic Ice Machine Manuf. Co.* 79 Md. 103, 107. *O'Connor* v. *Forster*, 10 Watts, 418. *Western Union Telegraph Co.* v. *Hall*, 124 U. S. 444. *Howard* v. *Stillwell & Bierce Manuf. Co.* 139 U. S. 199, 206.

We find no error of law at the trial, and the exceptions must be overruled.

*So ordered.*