No. 20,664.

A. J. BRUNSWIG, *Appellant* and *Appellee,* v. THE FARMERS GRAIN, FUEL & LIVE STOCK COMPANY, *Appellee* and *Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Shipment of Wheat—Contract Modified — Letter — Telegram—Destination Changed.* Three contracts having been made for the shipment of wheat from Alden to Galveston, the seller wrote to the buyer saying: "Your favor of the 28th at hand. We regret that you will require us to load capacity cars on all grain sold. We will load them that way. We are ready to load out the first car for July shipment. Please give us billing to-morrow. The Santa Fe refuses to accept Galveston shipments. Please state what you want us to do with the wheat. What are you going to do about it?" On the next day the buyer wired the seller: "Bill wheat to Fort Worth, Texas." *Held,* that in the absence of extraneous evidence indicating a different intention, the telegram is to be interpreted as authorizing a shipment to Fort Worth of all the wheat contracted for, and as effecting a modification of the contracts to that extent.

2. CONTRACT—*Shipment of Wheat—Modified Contract Assigned—Rights of Assignee.* One to whom the contracts were assigned after such modification, regardless of his knowledge thereof, could assert no rights against the seller under the original contracts except as so modified.

3. SAME. Where such assignee refused to accept and pay for a car of wheat shipped under the first contract, giving as a reason that the shipment had not been made to Galveston, and showed by his conduct that he would not receive shipments made to Fort Worth, in an action brought against the seller for damages resulting from a failure to deliver wheat at Galveston, it is held that a judgment for the defendant was justified irrespective of other questions presented.

Appeal from Rice district court; DANIEL A. BANTA, judge. Opinion filed April 7, 1917. Affirmed.

*W. G. Fairchild, W. H. Lewis,* and *H. S. Lewis,* all of Hutchinson, for the appellant; *George W. Groves,* of St. Joseph, Mo., of counsel.

*Samuel Jones,* and *Ben Jones,* both of Lyons, for the appellee.

The opinion of the court was delivered by

MASON, J.: ' A. J. Brunswig, doing business as the A. J. Brunswig Grain Company, of St. Joseph, sued the Farmers Grain, Fuel & Live Stock Company, of Alden, for failure to deliver two shipments of wheat according to the terms of two contracts made with the Smith-Mann Grain Company, of Kansas City, and by it assigned to the plaintiff. An appeal is taken from a judgment rendered upon a verdict for the defendant.

The evidence was mainly in the form of documents, and there is little or no room for dispute as to the material facts. The defendant, as seller, and the Smith-Mann Grain Company, of Kansas City, as buyer, contracted by the execution of three separate instruments, two being dated July 11 and the third July 14, 1914, for the delivery of four cars of wheat at Galveston. The first writing called for one car at $82\frac{1}{4}$, to be delivered in July; the second, for two cars at 82, in August; and the third, for one car at $80\frac{7}{8}$, in twenty days (from July 14). On July 30 the defendant notified the Smith-Mann company that it was ready to load out the first car, stating that the Santa Fe refused to accept Galveston shipments, and asking what to do about it. The Smith-Mann company on the next day wired: "Bill wheat to Fort Worth, Texas." The defendant at once shipped a carload to Fort Worth, under the first contract, and made a draft upon the Smith-Mann company for the price, with the bill of lading attached. The draft was not paid, the buyer apparently having become financially embarrassed. On August 1 the Smith-Mann company assigned the three contracts to the plaintiff, and notified the defendant to that effect. At the request of the Smith-Mann company the defendant had the draft presented to the plaintiff, who refused to pay it, because of the wheat having been shipped to Fort Worth instead of to Galveston. Before the defendant knew of the final refusal of the plaintiff to pay for the car of wheat it had shipped to Fort Worth it wrote to him (on August 5) stat-

ing the details with regard to the wheat it had contracted to the Smith-Mann company, and asking him to give it the billing on the 80⅞-cent car as soon as possible, adding that it would hold the other two cars for shipment later in the month. On August 10 the defendant wrote to the plaintiff in effect notifying him that by reason of the nonpayment of the draft it had canceled the contracts. On August 11 the plaintiff wired and wrote to the defendant asking that the wheat be shipped to St. Joseph. The defendant in a letter of August 13 denied all liability and refused to reopen the matter.

The court submitted to the jury the question whether the telegram from the Smith-Mann company to the defendant reading "Bill wheat to Fort Worth, Texas," referred to all the wheat covered by the three contracts, or only to that part of it covered by the first contract, which was then ready for shipment. Instructions were given to the effect that if the telegram referred to all the wheat the defendant was justified by the plaintiff's conduct in refusing to make further shipments; but that if it referred only to the wheat covered by the first contract the defendant was liable to the plaintiff for such refusal. The jury obviously decided that the telegram referred to all the wheat.

1. The plaintiff contends that as all the competent evidence concerning the meaning of the telegram was in the form of unchallenged documents its effect was a question of law, and that the court should have decided that it related only to the shipment under the first contract. The error, if any, in submitting to the jury the question of the effect of the telegram was not material if they gave it the proper construction. (*Hull v. Manufacturing Co.,* 92 Kan. 538, 141 Pac. 592.) And this court is of the opinion that such was the case. The letter to which the telegram was a reply was written July 30, and read as follows:

"Your favor of the 28th at hand. We regret that you will require us to load capacity cars on all grain sold. We will load them that way. We are ready to load out the first car for July shipment. Please give us billing to-morrow. The Santa Fe refuses to accept Galveston shipments. Please state what you want us to do with the wheat. What are you going to do about it?"

The telegram reading "Bill wheat to Fort Worth, Texas," was sent the next day. The sentence "Please give us billing to-

morrow" may be regarded as having special reference to the car that was ready for shipment, as to which it was necessary that direction should be given at once to avoid delay. But the letter obviously refers to more than the one shipment where it discusses the matter of the kind of cars to be used, and the inference is reasonable that the writer had in mind the later shipments as well as the earlier one when he wrote "The Santa Fe refuses to accept Galveston shipments. Please state what you want us to do with the wheat. What are you going to do about it?" He had already asked that he be given specific instructions on the next day as to the car that was ready. There was no occasion to say more to elicit information concerning that particular shipment. When he added "Please state what you want us to do with the wheat. What are you going to do about it?" the company addressed was fairly advised that he was inquiring with regard to all the wheat the defendant had contracted for Galveston delivery. The inquiry was natural, because, while the need of immediate information may have been confined to the one car, the defendant was authorized to ship all the remaining wheat within two days, and was required to ship a part of it within four days. We conclude that when the Smith-Mann company in answer to this letter ordered the "wheat" to be billed to Fort Worth, making no distinction between that covered by the first contract and the rest of it, and giving no other instructions concerning the matter inquired about, in the absence of any extraneous evidence indicating a different interpretation it must be held to have authorized a shipment to Fort Worth under all of the contracts, and thereby effected a modification of them to that extent.

In a letter already referred to, written to the plaintiff on August 5, the defendant said: "Please give us billing on the 80 and ⅞ cent car as soon as possible and then we will hold the two cars for Aug. shipment until later in the month." But the request for instructions as to the billing did not imply that the plaintiff could require delivery at Galveston, or any point other than Fort Worth.

2. The contracts were not negotiable instruments, and the plaintiff could not by assignment acquire any greater rights than were held by the Smith-Mann company. (5 Enc. L. & P.

Brunswig v. Grain Co.

940.) "An assignment of a contract, after the same has been modified by the parties thereto, is an assignment of the contract as modified, and not of the original contract." (5 C. J. 947.)

3. A number of other questions have been argued, but need not be discussed or decided, as the interpretation placed upon the letter and telegram referred to is fatal to a recovery by the plaintiff and therefore requires an affirmance of the judgment. While his correspondence with the defendant had relation specifically to the car of wheat which was actually shipped his attitude was and continues to be that he was under no obligation to recognize, and would not recognize, a shipment to Fort Worth. His demand is based solely upon the nondelivery of the wheat at Galveston. His offer to receive at Saint Joseph the wheat covered by the two later orders was made after the defendant had notified him of its cancellation of the contract, and in any event it was not under a legal obligation to conform to his directions in this regard. In accepting an assignment of the three contracts the plaintiff assumed their obligations as well as became entitled to their benefits. (5 C. J. 947.) The rule with regard to distinct and independent contracts between the same persons is that the breach of one of them does not permit the party aggrieved to refuse to perform another. (Williston on Sales, § 467, p. 806.) But by the weight of authority a wrongful refusal to pay for one of several installments of merchandise covered by one contract justifies the seller in refusing to make further deliveries. (9 Cyc. 649; 35 Cyc. 133; Williston on Sales, § 467, p. 810; *Lumber Co. v. Lumber Co.,* 86 Kan. 131, 119 Pac. 321.) The effect of such a breach does not depend upon how many contracts have been entered into, but upon the relation they bear to each other. Although two separate contracts of sale are made, if the buyer elects to connect them, as by refusing payment on one, in order to aid in effecting a settlement of the other, his refusal becomes a just ground for the seller to decline further performance. (*Lumber Co. v. Lumber Co.,* supra.) Here the three original contracts were modified by the same correspondence, and assigned to the plaintiff by a single instrument. The plaintiff refused to acept the wheat on the first contract for a reason that applied with equal force to the other two. In that situation

his conduct would seem to have relieved the defendant from further obligation. But that need not be determined because, as stated, this is not an action for failure to deliver wheat at Fort Worth.

The judgment is affirmed.