No. 22,188.

THE INDEPENDENT MILLING COMPANY, *Appellee*, v. THE HOWE SCALE COMPANY OF ILLINOIS, *Appellant*.

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Track Scale—Renunciation of Contract—Damages*. The correspondence between the parties evidences a contract for the purchase of a track scale with certain specified I beam and recording beam, first payment to be thirty days after shipment. After the contract had thus been entered into, the plaintiff wrote the seller that there had been some misunderstanding, and that it could not accept the seller's proposition. The scale company refused to accept the renunciation, but turned the matter over to its attorney, who requested payment. Later, the plaintiff demanded that the scale be shipped, which demand was not complied with. *Held*, that, both parties having finally treated the contract as in force, the plaintiff could recover damages for its breach.

2. APPEAL—*Properly Taken*. The appeal was taken in time, and the delay in filing abstract held not fatal.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed June 7, 1919. Affirmed.

*T. A. Noftzger, George W. Cox*, and *W. R. Glass*, all of Wichita, for the appellant.

*John McKenna*, of Kingman, for the appellee.

The opinion of the court was delivered by

WEST, J.: The milling company sued the scale company for damages for failure to deliver a track scale according to contract, and recovered. The scale company appeals.

In March, the plaintiff was advised by letter that the defendant had a Howe scale, and had referred the plaintiff's inquiry to a representative, who would call within a few days. April 6, 1917, the plaintiff wrote:

"Please ship via Santa Fe 1 Second Hand 46' Track Scale New Recording Beam & Steel Frame for which we agree to pay $700.00 Seven Hundred Dollars as follows: $350.00 30 days Balance $100.00 month until paid for payable at K. C. Mo."

In response a telegram was received:

"Accept Seven Hundred Dollar proposition, scale to include new beam and 15 inch I beams."

On the same day the defendant wrote that it proposed to furnish a scale to include 15″ new steel I beam frame. On the 9th the plaintiff wrote to the agent:

"We have copy of order accepted by Mr. Peak and note that he specified 15″ new steel I beam frame. We wish you would let us know if that is the way you reported the sale to us, as we were under the impression 'that it was a 18″ I beam. We also understood that it was to be a recording type beam."

On April 16, the defendant wrote plaintiff that the matter had been referred to the agent and begged to advise that on a 46' scale it used a 15″ I beam frame.

"It is understood that you get new recording beam, which we have had expressed to us from the Factory. The scale is practically ready for shipment, and all we need is your signature. Kindly sign, as per agreement, as the scale is packed ready for shipment."

On April 17, the defendant wrote:

"Replying further to your letter of the 16th, beg to advise that we are going to furnish 18″ I beam frame in place of 15″. Be sure and sign the contract and send it to us by return mail."

On April 23, the plaintiff wrote the defendant:

"With reference to the scale which we were trying to buy from you will say that there seems to have been considerable misunderstanding regarding this transaction. . . . There was also some misunderstanding between the description Mr. Dennis gave us of this scale and the way you described it, consequently we have made different arrangements and cannot accept your proposition."

Two days later the defendant wrote that it could not accept the cancellation, as the scale was ready for shipment; that the steel had been cut and drilled and was also ready for shipment; and that the cancellation could not be accepted, unless on payment of the amount of expense.

· The president of the milling company testified, among other things, that he understood the 18-inch I beam was to be furnished if the scale was bought, and that he wanted an 18-inch I beam.

"I did not offer to reimburse the defendant for what they had been out on the transaction after the receipt of the letter marked Exhibit 'I.' When we received that letter we thought we had some scales coming to us. They said they would not cancel the order and we thought it would come along. We waited a while, expecting the scales. The next we heard we got the letter from an attorney in Kansas City, Mr. Langley. . . . I did not reply to that letter."

When the written order for the scale, proposing price and terms of payment, was accepted, the contract was complete except the settlement of the details as to I beam and recording beam. These details were settled and agreed upon by the correspondence, closing April 17, thus leaving the contract in all respects binding, and one on which the minds of the parties had fully met. The acceptance of the written proposition was already an accomplished fact, and the request to sign and return the form inclosed in the subsequent letters did not operate to change the contract already in existence. When, a few days later, the plaintiff renounced the contract, the defendant had the option to cancel, or not, as it saw fit, for, as it takes two to make a bargain, it takes two to unmake one. (3 Elliott on Contracts, §§ 2027-2034.) The defendant notified the plaintiff that it would not cancel, and had the milling company said and done nothing further, we would have had a different situation. But, instead of standing upon its renunciation, it, within a short time, demanded performance and made the demand a second time, and, as its president testified, it supposed it had some scales coming, which means that the plaintiff had concluded, along with the defendant, to treat the contract as binding.

The rule is well settled that:

"If the promisee elects not to accept the renunciation and continues to insist on the performance of the promise, as he may do, the contract remains in existence for the benefit and at the risk of both parties." (13 C. J., p. 655.)

"In case the renunciation of the contract is not accepted by the adverse party, the renunciation may be withdrawn and the party renouncing after performance on his part may hold the adverse party to performance." (13 C. J., p. 657.)

(See, also, 6 R. C. L., p. 1024.)

Of the numerous authorities in support of the text, but two will be noticed. *Avery v. Bowden*, 5 El. & Bl., 714, 85 Eng. C. L. 714, 119 Reprint, 647, involved a contract to ship at a certain port within a certain time. On arrival, the master demanded a cargo, which was refused, but the master continued to demand, and before the running days were out war broke out, rendering the performance of the contract legally impossible. In an action for damages for breach of contract, it was held that as there had been no actual failure of performance before the war broke out, as the running days had not then expired, and as the plaintiff had not accepted the renunciation as a breach, the defendant was entitled to the discharge of the contract, which took place on the declaration of war. (Note, 13 C. J. 655.) In *Carlisle v. Green*, 131 S. W. 1140 [Tex. Civ. App.], it was held by the Texas court of civil appeals that, although one party to a contract for the exchange of lands had notified the other that he would not perform, but was told that he would be held to the contract, he could still call on the adverse party to perform. The court said:

"The appellee, not having treated the declaration of appellant as an end to said contract, appellant had the legal right to repent of his refusal to perform said contract, and to perform the same on any day within the time limited." (p. 1142.)

There are decisions which seem to hold to the contrary, but the weight of authority appears to be in line with those we have cited.

Both parties having finally concluded to treat the contract as a valid and subsisting one, each was bound to the other for its performance. Performance was demanded and refused, and it follows that the plaintiff was entitled to recover.

Complaint is made of the time the notice, proof of service, and journal entry were transmitted, and of delay in filing abstract. The notice of appeal was served in time, and this, of itself, gives jurisdiction. The delay in the matter of abstracting was not fatal.

The judgment is affirmed.

PORTER, J., dissents.