No. 23,496.

CHARLES F. ROCK, *Appellant*, v. JOHN C. GAEDE, *Appellee*.

SYLLABUS BY THE COURT.

1. CONTRACT—*Purchase of Flour—Attempted Rescission by Purchaser.* The buyer has no right to rescind, or refuse to perform, a contract for the purchase of a quantity of flour on the ground that a shipment of the same brand made under a separate contract between the same parties had proved unfit for use, particularly where earlier shipments had been satisfactory.

2. SAME—*Purchase of Flour—Contract Wrongfully Repudiated by Purchaser —Measure of Seller's Damages.* Where a milling company contracts for the future delivery of flour of its own manufacture and thereupon buys and holds wheat to enable it to fill the contract, upon the renunciation of the agreement by the buyer before the flour is made the company may, in an action for damages for the breach of the contract, recover the loss occasioned by the decline in the price of wheat from the time it was purchased until such renunciation.

3. SAME. Where after the execution of a contract for the future delivery of flour to be manufactured by the seller the buyer without right undertakes to cancel it, the seller may await the expiration of the period fixed for delivery and then recover damages based upon the difference between the agreed price and the market price of the flour at the end of such period, or at the time the refusal to accept delivery was treated by him as final.

4. SAME. Minor rulings considered.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion filed May 6, 1922. Reversed.

*J. L. Stryker, D. J. Sheedy,* both of Fredonia, and *Glen A. Wisdom,* of Kansas City, Mo., for the appellant.

*E. D. Mikesall,* of Fredonia, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Wichita Flour Mills Company has for several years been making a brand of flour called "Kansas Expansion." On August 7, 1917, John C. Gaede, who operates a bakery at Fredonia, ordered from it 150 barrels of that flour at $13.40 a barrel, to be shipped within thirty days, the order being accepted. On August 19 the buyer sent a letter stating that he canceled the order. The statement was repeated in a letter of September 2, which the seller appears to have accepted as a cancellation of the contract. The seller executed an assignment of its claim against the buyer by reason of his breach of contract to Charles F. Rock, who sued him

thereon.   A verdict was returned in favor of the defendant, on which judgment was rendered.   The plaintiff appeals.

The ground upon which the defendant gave notice of his cancellation or refusal to perform the contract was that a half car of Expansion flour, which he had begun using after its execution, had proved unfit for use—was incapable of making marketable bread. Evidence was introduced by him tending to support this claim.   The plaintiff complains of an instruction to the effect that the jury should return a verdict for the defendant if they found that the flour of that shipment was unfit as alleged, and believed that he was justified in cancelling his order for the later shipment on that account.   The defendant testified that he had used at least one car of Expansion flour before that complained of and had no fault to find with it.   In response to his complaint regarding the half car shipment the Mills company wrote that "every sack of Kansas Expansion is just like every other sack and our laboratory tests insure its being so."   To this the plaintiff replied, "Of course you claim that Kansas Expansion is the same always, but we beg to differ with you, it was alright until the last car we got."

A buyer who has contracted for flour cannot be required to accept an article that will not make bread.   (*Kaull v. Blacker*, 107 Kan. 578, 193 Pac. 182.)   But it does not follow that one who has contracted with the manufacturer for flour of a designated brand may without liability refuse to accept it because a shipment of the same brand purchased under a separate contract proves unfit for that purpose, where former shipments have been satisfactory.   The breach of one contract does not justify the aggrieved party in refusing to perform another.   (13 C. J. 613; Williston on Sales, 806, note 34; *Brunswig v. Grain Co.*, 100 Kan. 261, 265, 164 Pac. 154.) The flour alleged to have been unfit for use was furnished upon a different contract from that here sued upon, and the fact that each related to the furnishing of flour of the same brand does not so connect the two contracts as to justify treating them as one for the purpose of taking the case out of the general rule.   The statement in the letter of the Mills company (which the defendant contradicted) that all Expansion flour was alike cannot be deemed to establish conclusively even against the company that the flour that would have been shipped under the contract of August 7 would have been precisely like that of the shipment complained of.   There seems no reason to assume that it would have resembled that rather

than the earlier shipments with which no fault was found, and at any rate the buyer had no right to rescind the new contract because of the seller's breach of the prior contract, or upon his belief in the probability, however well founded, that the flour furnished under it would be unfit for use. As was said in a quite similar case the buyer's "anticipation of nonperformance, however reasonable under the circumstances, would not have been a justification for . . . rescinding or repudiating the second contract." (*Hanson & Parker v. Wittenberg*, 205 Mass. 319, 326.) The first paragraph of the syllabus of that case reads:

"Where there are two independent contracts between the same persons for the furnishing of certain goods of the same kind and quality at different times, the fact that the seller has committed a breach of the first contract by furnishing goods inferior to those required by the contract and by failing upon demand to furnish goods of the kind and quality required, does not justify the buyer in assuming that the seller also will break his second contract for a further supply of like goods, and, although the buyer may be reasonably apprehensive of a like breach of the second contract, he has no right to rescind or repudiate the second contract before it has been broken by the seller."

We conclude that the bad quality of the flour delivered under the prior contract could afford no valid ground for the cancellation of or refusal to perform the contract here involved.

2. The plaintiff in his petition alleged that in accordance with its practice the Mills company upon the making of its contract with the defendant purchased 675 bushels of wheat at the market price of $2.88 for use in filling the order, and that by August 19 the price had declined 73 cents, so that it suffered a loss of $494.75. The instructions adopted this measure of damages in case of a verdict against the defendant. The plaintiff in his brief states that he asked permission, which was denied, to amend his petition so as to present as an alternative measure of damages the difference between the contract price of the flour and its market value at the time of delivery. The abstract shows his request to have been merely a general one for leave to amend the petition to conform with the evidence. This, however, is not now important. If the case is to be retried it is desirable that a correct rule be adopted as to the amount of damages recoverable.

Inasmuch as the contract was to supply a brand manufactured by the seller it is obvious that the parties had in mind that the flour was not on hand—that it was to be made to fill the defend-

Rock v. Gaede.

ant's order. Where the buyer repudiates an executory contract to purchase an article to be manufactured by the seller various tests have been applied to determine the amount of damages recoverable. Illustrative cases are collected in a note in 58 C. C. A. 363, 377, 380. The effort always is to apply a rule that will make good the actual loss under the particular facts of the case. Where no steps have been taken in performance of the contract and no expenses have been incurred in preparation for it the correct rule would appear to be the one sometimes adopted, allowing a recovery of the value of the bargain, measured by the difference between the contract price of the article and what it would cost to produce it. A more common rule, which may lack something in strict accuracy but which has the advantage of being easier of application, is to allow the difference between the contract price and the market price at the time and place of delivery, the same as in cases where the seller is not the manufacturer. It has been held that in a contract for the delivery of flour by the manufacturer it is competent for the parties to agree that the seller's damages in case of a refusal by the buyer to accept delivery should be measured by the difference in the market price of wheat at the time of the contract and at the time of its breach. (*Milling Co. v. Baking Co.*, 95 Ohio St. 180; *Sheffield-King Milling Co. v. Jacobs*, 170 Wis. 389.) It has also been held that (in the absence of a specific agreement) no recovery can be had on account of the depreciation in the price of wheat purchased or contracted for, between the making of a contract to furnish flour and its breach by the buyer. (*Russell Miller Milling Co. v. Bastasch*, 70 Or. 475.) That decision was based upon the theory that such damages were not within the contemplation of the parties when the contract was made. It does not appear except as it might be inferred from the fact of the seller being a milling company that it was to manufacture the flour, and in the opinion it is said: "For aught that appears in this case, the plaintiff could have gone into open market and purchased flour to fill its contract." (p. 479.) The contract having been treated as one merely for the sale of personal property the decision is not really in point upon the question under consideration. In *Erie Baking Co. v. Hubbard Milling Co.*, 217 Fed. 759, it was held that upon the buyer's refusal to accept delivery of flour from the miller from whom it had contracted to take it, damages should be allowed for the decline in value of wheat bought to be used in its manufacture, between the time of such purchase and the breach of the contract.

Rock v. Gaede.

We think the measure of damages for the repudiation of a contract to buy flour from its manufacturer should ordinarily be the difference between the agreed price and the market value at the time and place of delivery. Where the miller has purchased wheat from which to make the flour and its value declines before the breach takes place this rule may obviously fail to compensate him for his actual loss. Possibly the practice of mills, as soon as a contract to deliver a certain quantity of flour is made, to buy or contract for sufficient wheat to produce it is so general that courts may take notice of it and parties may be deemed to contract with reference to it. Apart from that consideration, however, we think that such precaution is so reasonable that the loss that would be occasioned by a decline in value of wheat so purchased in case of a buyer's refusal to accept the flour he had agreed to take must be regarded as within the contemplation of the parties upon entering into the contract. One who obtains a contract for the delivery of articles he is to manufacture and who upon the faith thereof incurs expenses in procuring the raw material is entitled to be compensated for any loss occasioned thereby in case of a default of the buyer. One who has agreed to furnish flour of his own manufacture at a certain time for a fixed price necessarily becomes in effect a speculator, subject to gain or loss according to the fluctuations of the wheat market, unless he arranges to procure the wheat necessary to fill his contract at the then existing price, upon the basis of which his own contract was made. It is only by hedging—by buying wheat against his contracts to deliver flour—that the miller is enabled to set a price for a future delivery based upon the cost of manufacture regardless of the subsequent rise or fall of wheat. He who causes a loss by refusing to carry out his own agreement to take the flour ought not to be heard to urge that the manufacturer bought his wheat too soon when there is so great and obvious need for promptness in the matter. If the Mills company, as the plaintiff alleges, by reason of its contract with the defendant at once bought wheat sufficient to produce the required quantity of flour, and kept it continuously on hand, reserved for that purpose, until August 19, it should, as the trial court instructed, be allowed to recover damages measured by the fall in the price of wheat while it was so held. It is of course immaterial whether the identical wheat originally bought was kept during the

whole period, it being sufficient if the quantity on hand was at all times larger by that amount than it would otherwise have been.

3. If damages should be .allowed upon the theory indicated no further allowance should be made. But if the plaintiff should fail to prove the purchase and retention of the wheat he might under an appropriate amendment of his pleadings show himself entitled to the difference between the agreed price and the market price of the flour at the time the contract was canceled. Because of this possibility it becomes material to inquire what should be regarded as the date of cancellation. After the defendant's letter of August 19 further correspondence was had in which the Mills company tried to persuade the defendant to accept the flour, and it appears that the effort was not. abandoned until about September 4. The Mills company was not required to acquiesce in the defendant's renunciation of the contract, but had the privilege of waiting until the expiration of the time fixed for delivery upon the chance of his changing his mind. (*Milling Co. v. Scale Co.*, 105 Kan. 87, 181 Pac. 554, and authorities there cited.)

4. Complaint is made of an instruction submitting to the jury the question whether the plaintiff was the legal holder of the claim. It appears to be true as the plaintiff contends that there was nothing in the evidence to impair the effect of the written assignment by the Mills company to him, so that there was in fact nothing for the jury to try in this regard. The court refused. to strike out matters pleaded as a separate defense and overruled objections to evidence offered under it, but finally withdrew the defense from the consideration of the jury. There is therefore no occasion to pass upon the earlier rulings.

The judgment is reversed and the cause is remanded for further proceedings in accordance herewith.