THOMAS, Justice.
The appellee was successful in its action against the appellant for damages arising from an alleged breach of contract and the appellant seeks here a reversal of the resulting judgment.
According to the allegations of a third amended complaint and the exhibits attached to it and one of its three predecessors, the appellant on 1 -December 1952 had placed an order, No. 523, with the appellee for eight propeller assemblies and four days later had placed an order, No. 542, for 44 additional assemblies of the same type. No dates on which deliveries were to be made were stated in the first order but in the second it was specified that 12 of the assemblies were to be delivered in January, 16 in February and 16 in March of the following year.
The appellee averred that upon receipt of the later order it began immediately to manufacture the airplane parts and that when “approximately 85% of the units ordered under Purchase Order #542 had been manufactured * * * and while the [appellant] was in default * * * and while the [appellee] was not at fault, the [appellant] wrongfully and without cause on March 3, 1953, cancelled Purchase Order #542.’’ The appellee claimed that it had performed the obligations of its contract, “evidenced by * * * Purchase Orders #523 and 524 [sic] * * It will be noted here that appellee referred toi two orders and one contract. This reference will become significant as our discussion of the issue progresses.
The eight assemblies mentioned in the first order were sent, two at a time, to the appellant during the period beginning with December 1952, and ending in March 1953. Evidently the appellant paid for one shipment promptly, but delayed acceptance of the other three from two to six weeks. The appellant had agreed in both orders to pay cash on delivery. The deliveries seem to have been spaced so that each would be made after appellant had been paid for the preceding one.
No propellers had been forwarded by the appellee to the appellant in compliance with the later order, No. 542, when, on 3 March 1953, this order was cancelled by the appellant. In each order there appear *229 ed the condition: “The Buyer [appellant] reserves the right to cancel this order or any part thereof if delivery is not made within the time specified or within a reasonable time in case no time is specified * * On the day the appellant can-celled the second order 12 propellers were to have been sent in the preceding January and 16 in the preceding month.
The appellant challenges here the propriety of the court’s action in submitting to the jury the question whether or not actions of the appellant concerning the first order changed the conditions of the second and whether the orders constituted one contract or two. Now it will be seen that although the appellee alluded to two orders and but one contract, the court thought that there was a real question whether the orders constituted two contracts or one.
As we approach a discussion and decision we repeat, to emphasize, that although the orders were executed on identical forms, were signed by the same parties and covered the sale by one and purchase by the other of propellers, they bore different dates, described varying quantities of goods and different prices, and the times of deliveries were not the same. As we have written, no dates of deliveries appeared in the earlier; in the later, dates of deliveries were specified in prominent type.
The judge charged the jury that if they found that the contracts were separate, and if they determined from the evidence that it was the intent of the parties that the delivery schedule in the later order “was related to the performance by both parties of their obligation” under the earlier order, and if the jury found that appellant’s tardiness in accepting and paying for goods sent under the earlier order “constituted a waiver of the delivery schedule in the subsequent * * * order,” the jury should find for the appellee.
Appellee argues that the appellant attempts in the litigation to use for its “own purposes [appellee’s] failure to deliver when [appellee’s] failure to deliver on schedule was caused by [appellant’s] own conduct and acts.”
We do not find in the factual situation the elements of waiver or sound basis for the position. We cannot construe the conduct of the appellant in delaying acceptance of three of the four shipments under the first contract as indicating it did not need, and would not pay promptly for, propellers sent it under the second contract. The appellee may have decided that delay of the appellant in accepting three of the four lots of propellers forwarded to it required caution in sending more but this could hardly mean either that there was a waiver, or that appellee’s failure to abide by the second contract was chargeable to appellant; nor was the appellee justified in utterly disregarding its obligations under the contract in suit, and then recovering from the appellant for breach of that very agreement. We attach no significance to the telegram sent by appel-lee to appellant, 9 January 1953, asking about appellant’s requirements under the second contract. This inquiry was prompted by failure of the appellant up to that time to accept and pay fer a shipment made 10 December 1952. The telegram, in our opinion, had no effect upon the contract involved in this litigation because the contracts were separate and the appellee was bound to deliver on the dates specified.
We are now calling the orders contracts because we think they were separate and distinct. We also think the circuit judge should have so decided. City of Leesburg v. Hall & Harris, 96 Fla. 186, 117 So. 840.
Having concluded that the contracts were independent, we agree with what was written in Rock v. Gaede, 111 Kan. 214, 207 P. 323, 324, 27 A.L.R. 1152, with reference to a situation that was the converse of the present one but in which the principle seems to have been the same. A purchaser had placed two orders for flour and had cancelled the second order when *230 the flour shipped under the first had proved inferior in quality. The court wrote that “[t]he breach of one contract does not justify the aggrieved party in refusing to perform another.” Parenthetically, in the present case there was no actual breach but merely dissatisfaction with the purchaser’s delay in paying for three of the four deliveries under the first contract.- The telegram upon which appellee relies could not be considered a genuine attempt on its part to perform its obligation under the second contract. In the cited case, the court observed that the two contracts could not be considered one supply because the brand of merchandise to which they related and the parties who executed them were the same.
Of like effect was the decision of the Supreme Judicial Court of Massachusetts in Hanson & Parker v. Wittenberg, 205 Mass. 319, 91 N.E. 383. Two orders for coal had been placed and the second was countermanded when the purchaser discovered that the first was of poor grade. The court remarked that breach of the first contract by the seller did not justify the repudiation of the second contract by the buyer. The holdings in the following cases seem to harmonize with the ones already cited. R. C. Bowers Granite Co. v. Farrell, 66 Vt. 314, 29 A. 491; Hambleton v. U. Aja Granite Co., 95 Vt. 295, 115 A. 102.
From our study of the facts and the appropriate rulings on the subject, we are constrained to hold that the appellant was justified in cancelling the second contract which appellee had not performed and that the latter had no just claim for damages against the former.
The judgment is reversed with directions to enter one in favor of the appellant.
Reversed.
TERRELL, C. J., and HOBSON, THORNAL and O’CONNELL, JJ., concur.