Jack FISHER, Appellant,

v.

BOARD OF SCHOOL TRUSTEES OF the MT. PLEASANT TOWNSHIP COMMUNITY SCHOOLS, DELAWARE COUNTY, INC., Appellee.

No. 48A04–8601–CV–5.

Court of Appeals of Indiana, Fourth District.

Dec. 16, 1986.

Richard J. Darko, Robert G. Zeigler, Tabbert, Cremer & Capehart, Indianapolis, for appellant.

Raymond A. Brassart, Brassart Law Offices, Muncie, for appellee.

MILLER, Presiding Judge.

Jack Fisher, a veteran teacher with fourteen years seniority in the Mt. Pleasant Township Community Schools, was fired for insubordination because of a series of unreported absences and incidents of tardiness. The action of the board of School Trustees was reviewed by the Madison County Superior Court, which refused to reinstate Fisher. On appeal, Fisher presents two issues for review. Because the board did not choose to favor us with any argument on Fisher's second issue for review, and because Fisher demonstrates *prima facie* error on the part of the board and the superior court on that issue, we reverse.

### FACTS

Jack Fisher, a teacher with twenty-three years experience, taught at the Yorktown High School for fourteen years. Fisher's senior status entitled him to a tenured position; by statute he was granted an indefinite contract which could be cancelled only for certain specified reasons.

On January 21, 1983, Fisher awoke with severe pain, he was unable to talk or move for some time. He did not arrive at school on time, and the school switchboard operator attempted to reach him over the telephone. Fisher was at first unable to pick up the phone, but he finally managed to get the receiver off the hook. By the time Fisher was able to speak, the principal and assistant principal were headed to his home to see if he was seriously ill. When they arrived, Fisher was able to get out of bed and speak to them at the door. He explained to them that he was ill and would be going to the doctor later in the day.

That afternoon, Fisher went to see Dr. Stibbins. The doctor examined Fisher and scheduled him for tests the following Monday. Fisher notified the school that he would be taking a sick day. The tests revealed Fisher suffered from a condition known as spastic colon. Dr. Stibbins prescribed the drug Librax to control the pain and the colon spasms.

The drug Librax is actually a combination of two drugs. One is an anti-spasmodic. The second drug, Librium, is a tranquilizer which can have a sedative effect. As Fisher continued taking the medication, he experienced increasing difficulty in awakening in the morning. Fisher took some steps to try and awaken himself in the morning.

On February 3, 1983, Fisher failed to have his classroom open by 7:40 as required by school policy. In a written memorandum, the principal informed Fisher it was extremely important that the classroom be opened by 7:40.

On February 9, Fisher overslept. The switchboard operator reached him at about 8:00. He arrived at work at 8:30, approximately fifty minutes late. The principal, in another written memorandum, notified Fisher he would be docked one hour's pay for tardiness. The memorandum also stated any further instances of tardiness would result in a suspension without pay. Finally, the memorandum warned that, if Fisher were suspended, any further incidents of tardiness could result in the termination of Fisher's contract.

Fisher continued to take the Librax. On April 5, he again overslept and missed his first period class. He was suspended for five days without pay. In a meeting with the principal, the school superintendent, and a teacher's association representative, Fisher was warned that any further unreported absences or instances of tardiness would result in a recommendation that his permanent contract be cancelled.

Fisher contacted Dr. Thomas Hollingsworth, his family physician, about his continuing problems with Librax. Dr. Hollingsworth ordered a series of tests on Fisher; the tests revealed Fisher suffered an allergic reaction to Librax. Dr. Hollingsworth changed Fisher's prescription to Anaspaz, an anti-spasmodic which contained no Librium. Fisher did not miss school, nor did he report late, for the rest of the regular school year.

Fisher, pursuant to a supplemental teacher's contract, taught Driver's Education at Yorktown that summer. On July 22, Fisher was due to meet two students

for a driving lesson at 8:00 A.M. He awoke at 6:30, but he fell back asleep in a lawn chair in his back yard. He did not meet with the students at 8:00, and the school called his house. His daughter found him asleep in the yard and woke him. He reported to school at approximately 8:45.

The principal recommended Fisher's indefinite contract be terminated for insubordination, failure to follow corporation and building policies, and other good and just cause. Fisher was suspended without pay pending action by the school board. He requested the specific reason for his termination, and he was informed he was being terminated for neglect of duty, insubordination, and other good and just cause. Fisher requested, and was granted, a hearing by the board.[1] On September 13, the board voted to terminate Fisher's contract immediately.

## DECISION

Fisher argues it was improper, as a matter of law, for the school board to terminate his permanent teacher's contract because he failed to adequately perform under a supplemental service teacher's contract. The school board did not respond to this argument in its brief.

Normally, when an appellee fails to file a brief, we will reverse if appellant demonstrates *prima facie* error occurred. *Johnson County Rural Electric v. Burnell* (1985), Ind.App., 484 N.E.2d 989; *Becker v. Sandler & Sandler* (1981), Ind.App., 426 N.E.2d 707; *Kuykendall v. County Commissioners of Marion County* (1968), 142 Ind.App. 363, 234 N.E.2d 860. In *Roth v. Vandalia Railroad Co.* (1919), 187 Ind. 302, 119 N.E. 1, our supreme court held that this rule also applied where the appellees filed a brief which did not respond to

all the issues raised by the appellant. In reaching its decision, the court relied on *Burroughs v. Burroughs* (1913), 180 Ind. 380, 103 N.E. 1, which was a case in which the appellee failed to file a brief.

Thus, *Roth* clearly holds that the same standard should be applied where the appellee fails to brief any material issue as when the appellee fails to file a brief at all.[2] When the appellee fails to file a brief we apply the *prima facie* error rule because it is not our responsibility to develop arguments for either party. The court, in *Roth*, noted, "This rule was not declared in the interest of an appellant, but for the protection of the court, in order to relieve it of the burden of controverting the arguments and contentions advanced for reversal, which duty properly rests upon counsel for the appellee." *Roth, supra,* 119 N.E. at 1 (quoting *Burroughs, supra,* 103 N.E. at 2).

The school board chose not to respond to Fisher's contention that failure of performance under one contract is not grounds for the termination of a second contract. If Fisher demonstrates *prima facie* error in this case we will reverse because we will not presume to argue this issue for the school board.

In Indiana, the status of teachers is determined by contract. *Bruck v. State ex rel Money* (1950), 228 Ind. 89, 91 N.E.2d 349. By statute, there are three types of teacher's contracts which school boards must use. The first of these three types of contract is the regular teacher's contract. IND.CODE 20–6.1–4–4; I.C. 20–6.1–4–5; 20–6.1–4–6. The regular teacher's contract governs the employment of any full time teacher during the regular school year. The specific duration of the regular teacher's contract must be set out in the con-

---

1. The school board made extensive findings of fact and conclusions of law. Our restatement of the facts is based on the facts as found by the board. We must point out, however, that some of the board's conclusions of law were erroneous. The board found Fisher's tardiness breached his summer contract. This finding is correct, but the board further concluded the breach of his summer contract justified termination of

his permanent contract. We must conclude the board erred.

2. For a general discussion of the proper procedure when appellee omits material from his brief, *see* 5 C.J.S. *Appeal and Error* § 1344 (1958). For additional discussion of the issue, *see Magnolia Petroleum Co. v. Ball* (1949), 203 Okla. 514, 223 P.2d 136.

tract. I.C. 20–6.1–4–3(3)(A), (B); *School City of Lafayette v. Highley* (1938), 213 Ind. 369, 12 N.E.2d 927. The regular teacher's contract must also specifically state the amount of compensation due for the contract period. I.C. 20–6.1–4–3(3)(C), (D); *Highley, supra.* Any teacher who serves in a public school corporation for five or more years is entitled to a special form of the regular teacher's contract called the indefinite contract. I.C. 20–6.1–4–9. A teacher who qualifies for an indefinite contract under the section remains in a contractual relationship with the school after his regular contract expires by its terms. The relationship is presumed to continue until a new contract is signed.

■ There are two other forms of contract mandated by the statute. The first of these, the temporary teacher's contract under I.C. 20–6.1–4–7, is not really at issue here. The second of these forms is the supplemental service teacher's contract under I.C. 20–6.1–4–8. This contract is to be used when a teacher provides professional services in evening school or summer school. *Id.* The statute does not require a teacher to be employed under a regular teacher's contract in order to be employed under a supplemental service contract. Although the pay scales are to be the same under both contracts, performance under one contract is not necessary in order to be compensated under the other contract. Since, in this case, performance and consideration for the two agreements was independent, they are separate contracts. *Crowell v. Himes* (1946), 117 Ind.App. 56, 69 N.E.2d 135.

■ Fisher's indefinite contract was cancelled when he was late for a driver's education lesson he was teaching pursuant to the supplemental service contract. Traditionally, the common law has refused to allow the termination of one contract because of a failure of performance under a separate contract. *Hal Roach Studios, Inc. v. Film Classics, Inc.* (2d Cir.1946), 156 F.2d 596; *Riley Aircraft Manufacturing, Inc. v. Koppers Company* (1957), Fla., 99 So.2d 227; *Rock v. Goede* (1922), 111 Kan. 214, 207 P.323; *Hanson & Parker v.*

*Wittenberg* (1910), 205 Mass. 319, 91 N.E. 383. We must conclude Fisher has demonstrated *prima facie* error on the part of the trial court.

There may be a valid reason for not applying the general contract rule in employment situations such as this, but, if any exists, the school board has failed to present it for our consideration. We must therefore reverse the judgment of the trial court, and remand for proceedings consistent with this opinion.

Reversed.

CONOVER and YOUNG, JJ., concur.